FIRST NAT. BANK OF JEFFERSONVILLE, INDIANA, *v.* OHIO FALLS CAR & LOCOMOTIVE WORKS.

*(Circuit Court, D. Indiana.* January 9, 1884.)

ASSIGNEE OF PLEDGED SECURITIES—FORECLOSURE—ACCOUNTABLE TO ASSIGNOR.

Where the pledgee of mortgage bonds assigns them as collateral security for a debt of his own, and the assignee, foreclosing against the original pledgeor without joining the assignor as a party, buys in the bonds himself, he is bound to account to the assignor for the bonds or their value, and not merely for the amount paid by him for them at the foreclosure sale.

The Ohio Falls Car & Locomotive Company is a corporation duly organized under the laws of the state of Indiana. It stopped payment in the month of October, 1873. At that time it owned certain real estate, buildings, machinery, etc., in Jeffersonville, Indiana, which were subject to a mortgage of $121,000. There had been executed to it by the Chespeake & Ohio Railroad Company divers notes, aggregating the sum of $262,767.11, secured by the pledge of 329 bonds, of $1,000 each, issued by the said Chesapeake & Ohio Railroad Company, and secured by a mortgage upon its property. Of these notes the Ohio Falls Car & Locomotive Company had discounted with the First National Bank of Jeffersonville, Indiana, $62,043.80, all of which it had indorsed. The said Ohio Falls Car & Locomotive Company had also borrowed from the Western Financial Corporation, the Bank of Kentucky, and J. W. Sprague, trustee, divers sums of money, aggregating the sum of $81,713.48, which it had secured by the pledge of the notes of the Chesapeake & Ohio Railroad Company to the amount of $89,636.42. The balance of the notes of the said Chesapeake & Ohio Railroad Company, amounting to $110,086.89, remained in the possession of the Ohio Falls Car & Locomotive Company. Of the bonds of the Chesapeake & Ohio Railroad Company, which had been pledged to secure their notes, a due proportion stood pledged for the notes so discounted by the First National Bank of Jeffersonville, and pledged to the Western Financial Corporation, the Bank of Kentucky, and J. W. Sprague, trustee. So that the First National Bank of Jeffersonville held as a pledge to secure the notes discounted by it 96 of said bonds, the Western Financial Corporation held 56, the Bank of Kentucky 14, Sprague, trustee, 27, and the company the remaining 139.

On the thirty-first day of October, 1873, the Ohio Falls Car & Locomotive Company made an arrangement with its creditors. This settlement provided, in its first and second sections, for certain debts which have since been fully paid, and need not be further noticed. By the third section it was provided as follows:

"That all parties who have discounted paper of the Chesapeake & Ohio Railroad Company, amounting in the aggregate to $62,043.80, and indorsed by the Ohio Falls Car & Locomotive Company. shall retain possession of said notes

of the Chesapeake & Ohio Railroad Company till the same are paid in full by the maker, or the obligations of the Ohio Falls Car & Locomotive Company as indorser, as provided for in section sixth, are complied with."

By section 4 it was provided as follows:

"That parties holding notes of the Ohio Falls Car & Locomotive Company to the amount of $81,713.48, secured by the notes of the Chesapeake & Ohio Railroad Company to the amount of $89,636.42, as collateral, shall retain their present collaterals till the notes of the Ohio Falls Car & Locomotive Company are paid in full as provided for in section six."

Section 5 relates to certain debts due for labor and personal service, which it was provided should be paid in full, and which have since been satisfied.

By section 6 it was provided:

"That all other creditors, including those embraced in the third and fourth sections, whether on book account or by note, or otherwise, amounting to $440,689.22, shall receive, in settlement of their claims now matured, or yet to mature, seven (7) equal notes of the Ohio Falls Car & Locomotive Company, payable respectively in one year, one year and a half, two years, two years and a half, three years, three years and a half, and four years from the fifteenth day of November, 1873, and bearing interest at the rate of 10 per per cent. per annum, and notes made for the same falling due each six months, and to be for the interest on the full amount of indebetedness at these specified times. On all notes past due, interest shall be allowed to November 15th, and all notes not matured shall be discounted as of November 15th; and all such notes shall be surrendered on the delivery of the new notes as provided for in this section."

By section 7 it was provided:

"Messrs. Washington C. De Pauw, of New Albany, Ind., John B. Smith, of Louisville, Ky., and J. H. McCampbell, of Jeffersonville, Ind., shall be appointed trustees under this agreement of extension, with power to fill any vacancies."

By section 8 it was provided.

"The Ohio Falls Car & Locomotive Company shall make to said trustees a good and valid mortgage of all the real estate, buildings, and machinery now owned by them, being recently erected and purchased at a cost of $483,369.37, (subject to an existing mortgage on a portion of the same securing bonds now outstanding to the amount of $121,000,) to secure to all the present creditors of the Ohio Falls Car & Locomotive Company payment of their claims according to the various provisions of this agreement, and when all said claims are paid in full then said trustees shall release said mortgage."

By section 9 it was provided as follows:

"The Ohio Falls Car & Locomotive Company shall deliver and assign to said trustees all the notes of the Chesapeake & Ohio Railroad Company now in their possession, amounting in the aggregate to $110,086.89, and said trustees shall have full authority to renew or dispose of the same, or make such compromise in settlement of the same with the Chesapeake & Ohio Railroad Company as may in their judgment be for the best interests of the creditors of the Ohio Falls Car & Locomotive Company; and whenever any payment or payments of interest or principal made on said notes to said trustees will in their opinion justify a distribution of the same, then they are authorized to make a *pro rata* distribution of the same on the unpaid notes of the Ohio Falls Car & Locomotive Company, given under the provisions of this agree-

ment and first maturing, each series of notes to be paid, principal and interest, in the order of its maturity."

By section 12 it was provided as follows:

"The seven (7) per cent. bonds of the Chesapeake & Ohio Railroad Company to the amount of $329,000, held in trust by Mr. T. L. Barrett, of Louisville, Ky., are pledged *pro rata* for the notes given by the Chesapeake & Ohio Railway Company to the Ohio Falls Car & Locomotive Company, to the amount of $262,767.11, (being at the rate of eighty cents on the dollar,) and none of said bonds shall be surrendered to said Chesapeake & Ohio Railroad Company, or otherwise disposed of, except with the joint consent of the party or parties holding the notes secured by such bonds and the trustees appointed under this agreement, provided the Ohio Falls Car & Locomotive Company complies with the obligations contained in this agreement; but in case the Ohio Falls Car & Locomotive Company fails in any of these obligations, then parties holding said notes of the Chesapeake & Ohio Railroad Company as collateral, or having discounted any of the same, are at liberty to take such action with reference to their *pro rata* of said bonds as they can legally do."

When the extension notes came to be executed under section 6, some of the creditors took interest notes separate from the principal notes, and others took them together. The six months interest note therein provided for was paid at maturity, and also the first and second principal notes, and the second and third interest notes. Default was made in the payment of the third principal and fourth interest notes. These matured November 15, 1875. In 1877 the trustees to whom the mortgage provided for by section 8 was executed, foreclosed it in Clark county, Indiana. By the order of the court entered in that cause all of the outstanding extension notes were adjusted as of January 15, 1877, interest being calculated on those which had matured up to that day, and rebate upon those which were to mature thereafter. The total amount of the extension notes upon this basis was fixed at $357,988.52. This included extension notes held by the First National Bank of Jeffersonville to the amount of $64,760.12, similar notes held by the Bank of Kentucky to the amount of $8,116.35, similar notes held by the Western Financial Corporation to the amount of $33,396.62, and similar notes held by Sprague, trustee, to the amount of $14,812.63. On these extension notes the trustees paid two dividends,—one on the fifteenth day of January, 1877, of 8 per cent., and one on September 1, 1877, of $6\frac{1}{2}$ per cent.

On February 14, 1877, the First National Bank of Jeffersonville, the Bank of Kentucky, the Western Financial Corporation, J. W. Sprague, trustee, and De Pauw, Smith, and McCampbell, as trustees, under section 9 of the agreement hereinbefore recited, brought suits in the Louisville chancery court against the Chesapeake & Ohio Railroad Company, upon the notes severally held by the plaintiffs therein, and praying that the bonds pledged to secure such notes should be sold, and each obtained judgment in accordance with the prayer of the petition directing a sale of the bonds. At a sale made in its case, the First National Bank of Jeffersonville bought the bonds pledged to

secure the notes held by it, and realized on them as a credit upon the debt, after the payment of the costs, the sum of $429.55. The Western Financial Corporation bought the bonds pledged to secure the notes held by it, and realized on them as a credit upon the debt, after the payment of the costs, the sum of $207.15. The Bank of Kentucky likewise bought the bonds pledged to secure the payment of the notes held by it, and realized on them as a credit upon the debt, after the payment of the costs, the sum of $20. The trustees, De Pauw, Smith, and McCampbell, bought in the bonds held by them, pledged to secure the notes held by them, as set forth in section 9 of the agreement above. About two years thereafter the Chesapeake & Ohio Railway Company was organized upon the wreck of the former Chesapeake & Ohio Railroad Company. Persons holding securities of the railroad company were admitted into the railway company upon certain terms, not necessary to be stated. The Western Financial Corporation took the bonds so purchased by it at judicial sale, as above recited, and having received therefor the prescribed securities in the new railway company, sold such securities, realizing upon them, about November 1, 1879, the sum of $19,429.84. The Bank of Kentucky pursued a similar course with the bonds purchased by it at judicial sale, and sold the securities it received in the new railway company about November 11, 1879, for $5,148.28. The First National Bank of Jeffersonville, J. W. Sprague, trustee, and De Pauw, Smith, and McCampbell, trustees, delivered their bonds to the Union Trust Company of New York, the designated depository in the reorganization of the railway company, and received the proper certificates therefor. When, however, they came to present these certificates, the railway company refused to issue the securities which they called for. After a litigation, the details of which it is not essential to state, the First National Bank of Jeffersonville compromised its claim, upon receipt from the defendants of 80 first mortgage $1,000 bonds of the Elizabethtown, Lexington & Big Sandy Railway Company. Sprague, trustee, likewise compromised the litigation upon his part by the receipt of 22 similar bonds. The trustees likewise compromised the litigation upon their part by the receipt of 116 similar bonds. These bonds were received by the parties in the spring of 1882, and were at the time worth from 90 to 92 cents on the dollar. The trustees have, under an arrangement assented to between them and the holders of the extension notes, and under the advice and direction of the Clark circuit court, paid to the stockholders of the old company 21 of these bonds. This leaves in their hands 95 of the said bonds. This litigation is had with the view of instructing the trustees as to how they will distribute these bonds. They will, when sold, after the payment of the expenses incident to the trust, yield about 22 per cent. on the amount of the extension notes, as fixed on the fifteenth of January, 1877. This computation excludes interest which has accrued since that date, and also the two dividends which

have been paid; but, as the interest will more than exceed the amount of the dividends, the estimate as to what each holder of the extension notes will receive is too large, rather than too small.

It is claimed on the part of the complainants that the only credit to which the Ohio Falls Car & Locomotive Company is entitled in respect to the Chesapeake & Ohio Railroad bonds purchased by them at judicial sale is the amount which said bonds brought at such sale; *second,* that each of them is entitled to the dividend on the full amount of the debt due, without regard to such credit; *third,* that each one of these creditors had two securities for their debts, viz., bonds specially pledged to each one of them, and the lien given to them in common with the other creditors upon the property mentioned in clause 8 of the agreement, and that mentioned in clause 9 of said agreement, and that where a creditor has such double security he is entitled to a dividend on his full debt out of each.

*Alex. P. Humphreys,* for complainants.

*Alex. Dowling,* for defendants.

WOODS, J.    Objections are made by counsel for the defendant, on account of alleged defects of the record of the procedure, to the jurisdiction of the Louisville chancery court, in the case of the First National Bank of Jeffersonville; but the questions thus presented need not be decided.    Treating as valid and effective, between the parties to the respective records, all the judgments of that court with which the parties to this case are concerned, the important fact remains that neither the Ohio Falls Car & Locomotive Company, nor the trustees to whom that company made the assignment of October, 1873, were made party to any of the cases, except that the trustees themselves brought one of the suits, and under the decree which they obtained bought the bonds thereby ordered to be sold.

It has been held in a number of instances, and seems to be well established, that where a mortgage of real estate has been assigned as collateral security for a debt other than the mortgage debt, and the holder of the collateral forecloses the mortgage, without making the assignor party to the purchase, and becomes the purchaser under the decree, the sale extinguishes the mortgagor's right of redemption only, and does not otherwise affect the relations of the assignor and assignee of the collateral.    The property, as well after foreclosure as before, is held for the benefit of both pledgeor and pledgee, and must be disposed of for the benefit of both.    The price bid at such sale does not operate as payment upon the debt for which the mortgage was pledged.    *Brown* v. *Tyler,* 8 Gray, 135; *Montague* v. *Boston & A. R. Co.* 124 Mass. 242; *Stevens* v. *Dedham Inst.,* etc., 129 Mass. 547; *Slee* v. *Manhattan Co.* 1 Paige, 48; *Hoyt* v. *Martense,* 16 N. Y. 231; *Dalton* v. *Smith,* 86 N. Y. 176; *Smith* v. *Bunting,* 86 Pa. St. 116; Jones, Pledges, §§ 659, 683.    The evident principle upon which these cases were decided is that the assignor or pledgeor of the collateral in each instance had an interest in the mortgage which could not be

extinguished by a procedure to which he was not a party, and it seems clear that in this respect there can be no distinction between the position of an assignor of notes, secured by a mortgage upon real estate, and that of an assignor of notes secured by the pledge of bonds or other like securities. It follows that the decrees of the Louisville chancery court, however effective to divest the Chesapeake & Ohio Railroad Company of any interest in the pledged bonds, had no such effect on the rights of the Ohio Falls Car & Locomotive Company, or of those claiming under that company. Each purchaser of the bonds under those decrees still held the same as a pledge or security for the payment of that portion of the notes of the car company executed to or held by such purchaser.

It is perhaps worth while to note that prior to the adjustment of October, 1873, the Jeffersonville National Bank was, as it seems, the owner of the notes of the Chesapeake & Ohio Railroad Company, indorsed to it by the car company, and the car company was liable to the bank only as indorser of those notes; but after and by force of that adjustment the car company became and was the principal debtor, liable to the bank upon its notes then made, and accepted by the bank, to which the notes of the railroad company, themselves secured by the bonds in pledge, became only a collateral. In this way the relation of the bank to the car company, in respect to the notes and bonds of the railroad company, became the same as that of the other holders, and the effect of their several decrees for the sale of their respective bonds the same. They are, therefore, all alike bound, not to give credit for the amount of their respective bids, but to account for the bonds purchased, or for the proceeds or value thereof, in case they have been disposed of.

In respect to the *third* proposition of the complainants, it is the opinion of the court that it is true, and that distribution should be made accordingly: provided that no one shall receive from the trustees more than enough, after application of the proceeds or value of his collaterals, to pay the remainder of his claim, with interest, as evidenced by the extension notes.