## Jacob J. Plucker *v.* Benjamin F. Teller, Appellant.

*Bailment—Sale of pledged property—Trust and trustee—Notice.*

Where property is pledged for the payment of a debt, the pledgee is, within certain limits, a trustee who is bound to act for the pledgor's interest as well as his own, but the interests of the pledgor and pledgee are not identical; and where their interests may require different action, the pledgee is justified in taking care of his interests after having put the other party on his guard by notice to him that he must look out for himself.

A mortgage was pledged to secure a debt.  A default having occurred in a payment on it, the pledgee, at the pledgor's request, foreclosed it, and the mortgaged premises were put up for sale by the sheriff.  The pledgee gave explicit notice to the pledgor that he would only act for himself, and would not bid up the property for any more than enough to protect his claim, and that if the pledgor desired to bid anything above that amount it would be necessary for him to be present at the sale himself.  *Held*, (1) that the notice relieved the pledgee from any trust in case he purchased; (2) that the pledgee in purchasing bought for himself and in his own right; (3) that the pledgor was not entitled to any share of the profits realized by the pledgee on a resale of the property; (4) that the burden of proof was upon the pledgee to show the circumstances that entitled him to buy clear of any trust for the pledgor; (5) that even if the jury should decide in the pledgor's favor in a suit to recover the profits, the pledgee was entitled to credit for commissions paid by him to a real estate broker for selling the property, although he was a member of the firm of brokers himself.

Argued Jan. 14, 1896.  Appeal, No. 59, July T., 1895, by defendant, from judgment of C. P. No. 4, Philadelphia County, March T., 1894, No. 361, on verdict for plaintiff.  Before STERRETT, C. J., GREEN, WILLIAMS, McCOLLUM, MITCHELL, DEAN and FELL, JJ.  Reversed.

Assumpsit to recover profits made from a sale of real estate. Before ARNOLD, J.

At the trial it appeared that on April 25, 1891, plaintiff borrowed $1,200 from defendant and assigned to him a bond and mortgage for $2,500 as collateral security for the loan. On October 21, 1891, the loan being then within a few days of falling due, and the mortgagor having defaulted in the payment of the interest on the mortgage, plaintiff requested defendant as the holder to sue it out. Defendant informed him that he would do so, but that if this resulted in a sale of the mortgaged property under the foreclosure proceedings he would not agree to bid the property up beyond an amount sufficient to protect his loan. Defendant accordingly brought suit on the mortgage and obtained judgment for the amount of his debt, with interest and an attorney's commission, as provided for in the mortgage, of five per cent, the attorney's commission amounting to $129.73, and the property was advertised to be sold by the sheriff on January 4, 1892. A day or two prior to the sale the defendant again notified the plaintiff in writing that he would not bid the property up for any more than to protect the loan, together with costs and counsel fee, and that if he (the plaintiff) desired to bid on the property for anything above that amount, it would be necessary for him to be on hand. To this he got a reply from the plaintiff's attorney and agent, Mr. Rambo, that his client would not make a bid at the sheriff's sale, because it would require a bid making the price of the property at least $5,000. This was because of an existing first mortgage of $3,500, as well as the unpaid taxes and other claims then against the property. In the meantime, and before the sheriff's sale, the six months having expired, and defendant's loan being due, the defendant entered up judgment on the note in the court of common pleas, No. 3, in the sum of $1,274.91, being the amount of the debt, with interest and the attorney's commission of five per cent for collection. When the sheriff's sale took place the defendant bid the property up to $1,700, at which price it was knocked down to him. He subsequently received from the sheriff, or, rather, had credited on his judgment, the sum of $1,249.50, being all that was realized by the sale after deducting the expenses of the sale and the taxes and municipal claims paid by the sheriff.

Defendant, subsequently, through the agency of the firm of B. F. Teller & Brother, of which he was a member, resold the property at a profit.

. The court charged in part as follows :

It is always very unsafe for a pledgee to buy at his own sale. He cannot do it unless he has an agreement authorizing him to do so, but even then he must pursue the powers given to him strictly. [This was not a sale of a collateral at all; it was simply a change of the thing given as security, that is, the land was substituted for the mortgage. Therefore, the land, even after the foreclosure of the mortgage, remained as a pledge for the debt due by the plaintiff.] [1] The collateral itself had never been foreclosed. The pledge had not been sold to pay that debt. [Therefore, the land remained in the hands of Mr. Teller as a security for as much as Mr. Plucker owed him, and after that had been collected by a sale of the land, the balance realized from the sale belonged to Mr. Plucker, and Mr. Teller is his trustee for it.] [2] Brown v. Tyler, 8 Gray's Reports, 135 ; Matter of Gilbert, 104 New York Court of Appeals, 209.

[If Mr. Teller had said, " I will bid the property up to cover my debt," and had bid it that far and then stopped instead of buying the property, he could not have been blamed because the property was sold below its value. He could not have been charged with sacrificing it. When he bid it in and got a deed for it he did something more than protect himself; he became a purchaser of the property pledged and holds it for the plaintiff in place of the mortgage assigned to him. There was a change in the thing pledged, but no determination of the existence of the pledge.] [3]

Under those circumstances, I shall have to direct a verdict for the plaintiff for the amount due, after allowing proper credits. I will proceed to state the account.

| | |
|---|---:|
| It is agreed that Mr. Teller sold the property to Mr. Heller and received from it with return of taxes and other items | $2,647 61 |
| He paid out undisputed items amounting to      .      .      . | 542 33 |
| Leaving a balance of .      .      .      .      .      .      . | $2,105 28 |

[I disallow the commission of $65.00 claimed by Mr. Teller's firm. He is not entitled to any commission for selling the property.] [6] I disallow the claim of $129.73, which he claims, and will allow him a proper sum hereafter. The credits to which he is entitled, in my judgment, are:—

| | | |
|---|---:|---:|
| Balance brought forward . . . . . . | | $2,105 28 |
| Note of the plaintiff . . . .. . | $1,200 00 | |
| With interest from October 25, 1891, to February 23, 1892 . . . . . . . | 24 00 | |
| I allow him two per cent commission on that amount, although I think it is very generous, as no proceedings were taken except to enter judgment on the note . . . . . | 24 00 | |
| Court costs on that judgment . . . . | 4 37 | |
| Commission on $1,700 which passed through the sheriff's hands . . . . . . | 85 00 | |
| | | 1,337 37 |
| Which leaves a balance of . . . . . . | | 767 91 |
| With interest from October 25, 1891, to February 23, 1892 . . . . . . . . | | 126 70 |
| Balance due . . . . . . . . | | $894 61 |

[Gentlemen of the jury, you will render a verdict in favor of the plaintiff for $894.61.] [4, 5]

Verdict and judgment for plaintiff for $894.61. Defendant appealed.

*Errors assigned*, were (1–6) above instructions, quoting them.

*John G. Johnson, George P. Rich* and *Henry C. Boyer* with him, for appellant.—Where the debtor, instead of executing a mortgage on his own property as security to his creditor, transfers to that creditor a mortgage which he owns on property of a third person, as security for the debt; in other words, creates a mortgage of a mortgage; obviously the creditor when he seeks to foreclose or sue out the mortgage must give notice not only to the mortgagor, as the owner of the property, but also to his debtor, as the owner of the mortgage, because there are two equities of redemption, each entitled to protection : First, the equity of the mortgagor, as owner of the land, to redeem his land by payment of the mortgage debt; second, the equity of the debtor, who has assigned the mortgage to the creditor, to redeem his mortgage by payment of the debt which he owes to his creditor: Brown v. Tyler, 8 Gray, 135; In re Gilbert, 104 N. Y. Ct. of App. 200; Dalton v. Smith, 86 N. Y. 176; Slee v. Manhattan Co., 1 Paige, 48; Bloomer v. Sturgis, 58 N. Y. 163.

All that these cases therefore decide is that it is not sufficient merely to foreclose the mortgagor's equity of redemption, but notice of the proceedings must also be given to the borrower and his rights protected ; and that if this is not done, and the proceedings are conducted without notice to him, or without such action on his part as would estop him from subsequently contesting the lender's title to hold the premises if purchased at the sheriff's sale, free from his equity of redemption, he will not be estopped from subsequently calling on the lender to account for any surplus that he may have realized from the property beyond the amount of his debt, with interest and costs.

In the case of a terre tenant who had purchased the premises since the mortgage, a mere notice of the issuing of the writ of scire facias is sufficient to preclude him from afterwards availing himself of any defense which he might have made as a party to the scire facias suit: Mather v. Clark, 1 Watts, 491 ; Evans v. Meylert, 19 Pa. 402.

The plaintiff therefore, by virtue of his ownership of his equity of redemption, cannot claim to be in any better position, or entitled to any higher rights, or to any greater consideration than a terre tenant, the owner of the property itself.

The present case is entirely different from those upon which the court below relied, in that here the foreclosure of the pledged mortgage was not the mere result of the exercise of the power conferred at the time of the pledge, but of the subsequent demand of the pledgor made in furtherance of his own interests.

*Ormond Rambo*, for appellee.—The common law requires the pledgee to account for all income, increase, profits and advantages derived by him from the pledge in all cases where such an account is within the scope of the engagement, after deducting his necessary charges and expenses : 2 Kent, Com. 579 ; 18 Am. & Eng. Ency. of Law, 647; Brown v. Tyler, 8 Gray, 135 ; Gilbert's Est., 104 N. Y. 200 ; Slee v. Manhattan Co., 1 Paige, 48 ; Hoyt v. Martense, 16 N. Y. 232 ; Dalton v. Smith, 86 N. Y. 176 ; Stevens v. Dedham Institute, 129 Mass. 547 ; Bank v. Locomotive Works, 20 Fed. 65 ; Montague v. R. R., 124 Mass. 247 ; act of 1705, sec. 6, 1 Sm. Law, 59.

There was a trust relation between appellant and appellee concerning a certain property, and appellant could acquire no

rights in that property antagonistic to appellee: Bispham's Equity, 151.

OPINION BY MR. JUSTICE MITCHELL, March 30, 1896:

The principle that a pledgee shall not make a profit out of the pledge without liability to account for it to the pledgor is beyond question, but it is not applicable to the facts of the present action. It is not the case of a sale by the pledgee against the will or in derogation of the interest of the pledgor, or without notice to him, but one made by the pledgor's direction or request. The interest on the mortgage pledged as well as on the prior mortgage being unpaid, its value as an investment and as collateral security for the debt was depreciating, and the appellee himself called upon the appellant to realize on it by selling it out. This could not have been done by the terms of the pledge which only authorized appellant to sell and transfer the mortgage, a power which of course would have to be strictly pursued. By waiting a few days until his debt matured, appellant under the terms of the pledge could have sold the mortgage at public or private sale with the right to purchase and hold free of any trust or claim on the part of plaintiff. This however he did not do but acquiescing in plaintiff's request he sued out the mortgage, and in due course the property was put up by the sheriff for sale. Appellant was under no obligation to bid, but chose to do so in order to protect his interest in the mortgage as security for his debt. Had he bought in the property without further notice to the plaintiff the presumption might still have been that the purchase was to preserve the pledge for their mutual benefit according to their respective rights, and therefore that the relation of trust still continued, and the sale made, as the learned judge below held that it did, a mere substitution of the land for the mortgage. But appellant did not take this course. He gave explicit notice that he would act only for himself and would not bid up the property for any more than enough to protect the loan, and that if plaintiff desired to bid anything above that amount it would be necessary for him to be on hand himself. This relieved appellant from any trust in case he purchased, and put him in the position of an ordinary purchaser at a mortgage sale, who takes a clear title, even though he be the mortgagee.

This feature clearly distinguishes the present case from Brown v. Tyler, 8 Gray, 135; In re Gilbert, 104 N. Y. 200, and the other New York cases cited by appellee. In fact this case is more closely analogous to Bloomer v. Sturges, 58 N. Y. 168, in which the mortgagee was made a party defendant to the assignee's bill of foreclosure and his interest was held to have been extinguished. The principle of all the cases is that the pledgee being within certain limits a trustee is therefore presumed to act for the pledgor's interest as well as his own, but their interests are not identical, and where they may require different action the pledgee is entitled to regard his own, after having put the other party on his guard, by notice to him that he must look out for himself. This is what appellant did. When he bought therefore he bought for himself and in his own right. He thereby elected to take the property on account of the debt. If he had subsequently sold it at a loss he could not have called upon the plaintiff to make good the deficiency, for there was evidence that the latter had distinctly refused to preserve his interest by any separate bid of his own at the sale. On the other hand appellant having taken the risk was entitled to the profit on the resale. The burden of showing the circumstances that entitled him to buy clear of any trust for the pledgor being on the appellant the case must go to the jury on that point.

In any view of the case it was error to disallow the claim for commissions. If the jury should find in plaintiff's favor he would thereby get the profit of a good sale, and he should pay the commissions earned by the firm which made it.

Judgment reversed and venire de novo awarded.