REUBEN W. ROSS ET AL. V. GEORGE E. BARKER ET AL.

FILED APRIL 6, 1899. No. 8843.

1. **Findings of Fact and Conclusions of Law: SEPARATE STATEMENT.**
The request for a separate statement of conclusions of fact and
of law in the trial of a cause to a court without a jury, to ren-
der a compliance therewith compulsory, must be made not later
than at the final submission of the cause.

2. **Pledge of Note Secured by Mortgage: FORECLOSURE: RIGHTS OF
PLEDGOR.** If notes, accompanied by real estate mortgages by
which the payments of the notes are secured, are pledged as
collateral security for the payment of a debt and the mortgages
are foreclosed by the pledgee, in actions to which the pledgor
is not made a party, and the pledgee at the foreclosure sales
purchases the properties, if it appear that such action was with
the intent to acquire complete titles thereto, the pledgor may
affirm the sales and demand credit on the principal debt for the
amounts bid, less costs and expenses of the foreclosures, and if
the said sums in the aggregate exceed the debt, may recover the
excess.

ERROR from the district court of Douglas county.
Tried below before FERGUSON, J. *Affirmed.*

*William D. Beckett* and *Edward H. Moeran,* for plaintiffs
in error:

The district court erred in holding that when a note
and mortgage are assigned as collateral security, and
upon default the assignee or pledgee forecloses without
making his principal debtor a party and bids in the prop-
erty in his own name, it may be considered by the debtor
as an absolute purchase, and he is entitled to have the
amount of the bid credited upon his indebtedness. (Cole-
brooke, Collateral Securities 330; *First Nat. Bank of Jef-
fersonville, Ind., v. Ohio Falls Car & Locomotive Works,* 20
Fed. Rep. 65; *Hoyt v. Martense,* 16 N. Y. 231; *Dalton v.
Smith,* 86 N. Y. 177; *In re Gilbert,* 104 N. Y. 200; *Bloomer
v. Sturges,* 58 N. Y. 170.)

The court erred in refusing to state separately its con-
clusions of fact and its conclusions of law. (*Wiley v.*

*Shars*, 21 Neb. 715; *Sprick v.Washington County*, 3 Neb. 255; *Lowrie v. France*, 7 Neb. 191; *Howard v. Lamaster*, 13 Neb. 221; *Haller v. Blaco*, 14 Neb. 196; *Foster v. Devinney*, 28 Neb. 416; *Ross v. Miner*, 31 N. W. Rep. [Mich.] 185; *Thompson v. Russell*, 32 Pac. Rep. [Okla.] 56; *Nephi Irrigation Co. v. Jenkins*, 31 Pac. Rep. [Utah] 986; *Braden v. Lemmon*, 26 N. E. Rep. [Ind.] 476; *Farrar v. Lyon*, 19 Mo. 122; *Piercifield v. Snyder*, 14 Mo. 583.)

*E. J. Cornish, contra.*

References as to collateral security and mortgage foreclosure: *Haas v. Bank of Commerce*, 41 Neb. 754; *Easton v. German-American Bank*, 24 Fed. Rep. 523; *Wright v. Ross*, 36 Cal. 414; *Newport & Cincinnati Bridge Co. v. Douglas*, 12 Bush [Ky.] 573; *Bryan v. Baldwin*, 52 N. Y. 233; *Stokes v. Frazier*, 72 Ill. 428; *Hyams v. Bamberger*, 36 Pac. Rep. [Utah] 202; *Dimock v. United States Nat. Bank*, 25 Atl. Rep. [N. J.] 926; *Choutcau v. Allen*, 70 Mo. 290; *Maryland Fire Ins. Co. v. Dalrymple*, 25 Md. 242; *Lucketts v. Townsend*, 49 Am. Dec. [Tex.] 737; *Marye v. Strouse*, 5 Fed. Rep. 483; *Taussig v. Hart*, 58 N. Y. 425; *Bank of the Old Dominion v. Dubuque & P. R. Co.*, 8 Ia. 277; *Fletcher v. Dickinson*, 7 Allen [Mass.] 23; *Stearns v. Marsh*, 4 Den. [N. Y.] 227; *Strong v. National Mechanics Banking Ass'n*, 45 N. Y. 718.

References as to requests for separate findings: *Miller v. Lively*, 27 N. E. Rep. [Ind.] 437; *Hartlep v. Cole*, 120 Ind. 247; *Levi v. Daniels*, 22 O. St. 38; *Blish v. McCormick*, 49 Pac. Rep. [Utah] 529; *Murphy v. Snyder*, 8 Pac. Rep. [Cal.] 2; *Haller v. Blaco*, 14 Neb. 196; *Doane v. Smith*, 51 Neb. 280; *Town v. Missouri P. R. Co.*, 50 Neb. 768; *Missouri P. R. Co. v. Vandeventer*, 26 Neb. 223; *Oxford Township v. Columbia*, 38 O. St. 94; *Heintz v. Cooper*, 47 Pac. Rep. [Cal.] 360; *Weaver v. Apple*, 46 N. E. Rep. [Ind.] 642; *Leach v. Church*, 10 O. St. 149; *Cottrell v. Nixon*, 109 Ind. 378; *Missouri, K. & T. R. Co. v. Wallis*, 38 S. W. Rep. [Tex.] 357; *Brock v. Louisville & N. R. Co.*, 21 So. Rep. [Ala.] 994.

.HARRISON, C. J.

It appears herein that on or about May 25, 1887, George E. Barker, Frank B. Johnson, and Robert Garlichs borrowed from Reuben Ross, a resident of New York state, the sum of $100,000, and to evidence the indebtedness created by the transaction executed and delivered to him their promissory note. As security for the payment of the amount of the loan certain promissory notes and the real estate mortgages, by which their payments were secured, were transferred by the parties borrowers to the loaner and payee of the principal note. There were about 300 of the notes which were indorsed and delivered as collateral securities, and the amount of them, in the aggregate, was something more than $100,000. The mortgages were duly assigned. Subsequent to the completion of the transaction of loan Reuben Ross died, and the further matters of business relative to the affair were under the management and direction of the executors of his estate. After the loan was effected the interests of Robert Garlichs and Frank B. Johnson in the collateral securities were by assignment passed to the National Bank of Commerce. There had been foreclosures of many of the mortgages, and at the sales of the mortgaged premises Reuben Ross, or the executors, had become the purchasers. They had also compromised with some of the debtors of the collateral securities, by acceptance of renewals in some instances and by reception of conveyances of titles of the mortgaged properties in others. The executors sought in this action to recover an amount of the original loan indebtedness, which they asserted was due and unpaid. The defendants pleaded that more than sufficient to pay the entire principal debt and interest had been realized from payments, foreclosures, etc., of the collateral securities. The National Bank of Commerce intervened in the action and set forth its claimed rights, as assignee of the interests of certain of the parties to the loan, in the collateral securities. In the reply of the plaintiffs there

were statements relative to the foreclosures of the mort-
gages and the purchases at the sales of the mortgaged
premises, or rather that they were "bid in" and the titles
taken in the name of Reuben Ross during his life, and
in the names of his executors thereafter, and the offer
was made to convey all said titles to the principal de-
fendants in this suit. Issues were joined, and a trial
thereof had to the court without a jury. This was during
the 24th, 25th, and 26th days of September, 1895, and
the cause was then, so far as we can gather from the
record, submitted.

On January 2, 1896, there was filed a decree, of which
the following is the opening statement: "This cause here-
tofore coming on to be heard in its regular order upon the
petition of the plaintiff, the answer of the defendant
George E. Barker, the reply of the plaintiffs to the an-
swer of George E. Barker, the petition of intervention
of the National Bank of Commerce, the answer of said
plaintiffs to said petition of intervention of the National
Bank of Commerce, the reply of the National Bank of
Commerce to said answer, and the evidence and argu-
ment of counsel, and a jury being waived in open court by
all the parties hereto, was submitted to the court, on con-
sideration whereof, and the court being duly advised in
the premises, on this 2d day of January, 1896, finds."
This entry discloses that the submission of the cause had
been at a time prior to the decision. On the same day,
January 2, 1896, there was filed for plaintiffs a request
that the court state in writing and separately its conclu-
sions of facts and law. This request was refused. There
was a judgment for defendants, and the plaintiffs have
removed the cause to this court.

It is argued that the trial court erred in its refusal of
the request for separate statements of its conclusions of
facts and of law, and in this connection we are referred
to section 297 of the Code of Civil Procedure as providing
for such a request, and it is urged that if it is made, there
must be a compliance with it, and its refusal may furnish

a reason for a reversal of the judgment, if adverse to the party who preferred the request. Section 297 of the Code of Civil Procedure is as follows: "Upon the trial of questions of fact by the court it shall not be necessary for the court to state its finding, except, generally, for the plaintiff or defendant, unless one of the parties request it, with the view of excepting to the decision of the court upon the questions of law involved in the trial, in which case the court shall state in writing the conclusions of fact found, separately from the conclusions of law." It has been decided by this court that it is error to refuse to make and state separate conclusions and findings of law and fact if requested. (*Wiley v. Shars*, 21 Neb. 715.) But it is advanced for defendants in error that the request must be seasonably made, and if not so, may be refused, and that the request in this case was too late to force recognition. It has been said by this court that the request must be before judgment (*Wachsmuth v. Orient Ins. Co.*, 49 Neb. 590), and we are satisfied that it is proper, in order that the trial judge may examine and consider the questions of fact and of law and formulate and prepare the requisite statements, that the request should be made at the time of the trial, and not later than at the final submission of the cause for decision, or at a later time, to be fixed by the court. The judge should not be called upon, as in this case, at the same time of the rendition of his decree to then particularize in regard to every conclusion of fact and also of law. He undoubtedly might and may do so. We think it discretionary with him, if the request is made later than at the time we have indicated, whether he will comply with it or not, but it seems only right and compatible with true rules of procedure that if the judge must comply with such a request, the same be made at such a time as will enable him to comply with it conveniently, and with due consideration and preparation of his statements. It is stated in Elliott, Appellate Procedure, section 729: "Where the statute fixes the time within which a request shall be made, it

will generally be futile unless made within that time.  If
no time is fixed by law or by the rules of practice within
which the request shall be made, then it must be made
within a reasonable time, before action is required upon
it.  The trial court should be allowed a reasonable time
and opportunity to consider and decide upon the ques-
tions involved, and to do what the request requires
should be done."  Also in regard to a request for special
findings: "The request must be made at the commence-
ment of the trial, in order to render it the compulsory
duty of the court to find the facts specially."  (Elliott,
Appellate Procedure sec. 732; *Hartlep v. Cole*, 120 Ind.
247; *Miller v. Lively*, 27 N. E. Rep. [Ind.] 437.)  We are
satisfied that what we have hereinbefore indicated is the
correct rule to establish in regard to the time at which
the request should be preferred, and it follows that the
refusal of the request in this case will not suffice for a
reversal of the judgment.

The further question presented at this time is not one
of practice, but of the merits.  It is of the relative rights
of the parties, where one who holds as collateral security
a note secured by mortgage on real estate, on default in
payment of the principal debt, forecloses by action the
mortgage of the collateral security, to which action he
does not make the principal debtor a party, and said
holder of the collateral security at the foreclosure sale
purchases the mortgaged property.  Does he hold the title
and property as collateral security, as he did the mort-
gage?  Can his debtor redeem it by payment of the prin-
cipal debt and can he also, if he so elects, allow the pur-
chase to stand and ask and force a credit on his debt of
the amount of the bid at the foreclosure sale by his
creditor?  As is stated in the brief for defendants in
error, it appeared, or there was evidence to sustain the
findings, that plaintiffs and Reuben Ross "(a) had ex-
tended the time of payment of certain collateral notes;
(b) had canceled and surrendered to the makers certain
other collateral notes, accepting in satisfaction thereof

deeds to the real estate theretofore mortgaged to secure
the same; (c) had foreclosed certain other collateral notes
and mortgages, and had themselves become the pur-
chasers at the sheriff's sale of the lands mortgaged."
Of the first two it may be said that this court has an-
nounced a rule by operation of which the amounts due
on the collaterals involved in transactions of the nature
described could be claimed as credits and must be al-
lowed as such on the principal debt. "If a pledgee, with-
out the consent of the debtor, renews or extends a note
pledged as collateral, or surrenders such note and takes
new security, he must account to his debtor as if he had
collected it in full." (*Haas v. Bank of Commerce*, 41 Neb.
754.) Within the principle of the doctrine of that case
the plaintiffs would be bound to account for the amounts
of the notes extended; also those canceled and surren-
dered on the compromises and adjustments of the matters
of indebtedness between the holders and the debtors of
the collateral securities.

In regard to the actions to which the assignor of the
collateral securities was not a party, in which there were
foreclosures and sales and purchases of the property by
the holders of the securities, we ascertain that the follow-
ing doctrine has been asserted: "The holder of a negotia-
ble promissory note, secured by mortgage, as collateral
security for a debt, is entitled, upon default, to proceed
with the foreclosure of the property included in the mort-
gage security, and to entry, and possession thereof, under
appropriate proceedings. Such proceedings, however, do
not change the relations of the parties to the contract of
pledge, the land being simply substituted as collateral
security in place of the notes and mortgage, and remain-
ing subject to redemption. Nor, as between the pledgor
and pledgee, is such foreclosure, entry, and possession
a payment of the debt for which the notes and mortgage
are held as collateral security." (Colebrooke, Collateral
Securities, p. 330, sec. 183.) The foregoing statement
made by the author of the text was evidently derived

from a number of decisions which are cited by him in its support and were announced in actions by the assignors of securities as collateral where there had been sale of the pledges and sales under foreclosures, if the collaterals were notes accompanied by mortgages, and the assignee or pledgee, if you please, had purchased at the sales, and the object of any suit, to which we now refer more particularly, was to redeem the pledge or the property which had been sold. The proposition upon which the decisions were based was that the assignee of the collateral securities held them in trust; his relation to the assignor was a fiduciary one, and the sale to the former left the property, as is stated in the quotation we have given, in his hands as security. The transfers of the real estate mortgages to Reuben Ross as collateral securities may not be inaptly termed mortgages of the mortgages, or it may be said that they were pledged, and it has often been decided that where notes, bonds, or shares of stock have been pledged or placed as collateral securities, that in default of payment of the principal debt they may, with due procedure, be sold, and if purchased by the pledgee the sale is voidable at the election of the pledgor, and he may redeem the securities or treat the sale as valid and have the amount of the bid or purchase price credited on the debt. If a mortgage, if pledged as collateral security, may be sold, and if the pledgee becomes a purchaser, the pledgor may redeem or affirm the sale at his option, we cannot perceive why the same rule should not be enforced if the mortgage is foreclosed, and in the event of the purchase of the property involved, by the assignee or pledgee, the property is still to be considered as collateral security and may be redeemed, it would seem that the option to affirm the sale should be just as applicable as if the sale had been of the mortgage itself. The reason for any distinction is not apparent, but in the case at bar it may be said that there arose a question of the intention with which the purchases at the foreclosure sales were made by or for

Reuben Ross, and after his decease his executors, and that a finding that the bids and purchases were with intent to effect complete transfers of the titles to the properties was sustained by the evidence, and we think clearly where this appears the pledgee may affirm the sales and have credit for the amounts of the bids, less costs and expenses of the foreclosures, and, as was adjudged in the trial court in this case, may recover the excess of the aggregate of the amounts of the bids over the amount of the principal debt. Whether the election by the pledgor to affirm the sales would exist, in a similar case, where nothing appears, except the facts of the bids and sales,—no other circumstances or evidential matters, —to disclose any particular intention, we need not decide at this time. Conformably to the views expressed the judgment of the district court must be

AFFIRMED.