[No. 6138. Decided September 5, 1906.]

MARK A. MUNSON, *Plaintiff and Appellant,* v. AMERICAN
SAVINGS BANK & TRUST COMPANY, *Defendant
and Appellant.*[1]

PLEDGES—FORECLOSURE OF COLLATERAL BY PLEDGEE—ACCOUNTING—
RIGHTS OF PLEDGOR. Where a debtor assigned as collateral security,
notes and a mortgage which he was foreclosing to his creditor, a
bank, with the understanding that the bank would complete the fore-
closure, and the parties afterwards entered into a written agreement
to the effect that the bank should make further advances to acquire
prior liens and perfect the title, agreeing to hold the same for eigh-
teen months and convey the same to the debtor upon repayment of
all sums due and all advances and expenses, the debtor agreeing to
pay any balance remaining due, the bank, after bidding in the prop-
erty for a sum in excess of the debt and all advances with intent to
perfect its own title, and holding the same for said eighteen months,
and selling the same on the debtor's failure to redeem it, at an undis-
closed price, is bound to account to the debtor for the difference be-
tween the price bid with interest and the amount of the debt due,
advances and costs; since a pledgee acquiring title in his own right
at a fair valuation with the knowledge and consent of the pledgor
holds the title for his own benefit and not in trust and must account
to the pledgor for the valuation at which he acquired the title (RUD-
KIN, J., dissenting).

Cross-appeals from a judgment of the superior court for
King county, Albertson, J., entered January 30, 1906, upon
findings in favor of the plaintiff, after a trial on the merits be-
fore the court without a jury, in an action for an accounting.
Modified.

*H. T. Granger,* for plaintiff.

*John W. Roberts,* for defendant.

CROW, J.—This action was commenced by the plaintiff
Mark A. Munson, against the defendant, American Savings,
Bank & Trust Company, to recover the sum of $2,000 and
interest, claimed to be due on two certain notes which plaintiff

[1]Reported in 86 Pac. 1047.

had assigned to the defendant as collateral security, and which
he alleged the defendant had converted to its own use after
the principal debt had been paid.  On trial without a jury,
judgment was entered in favor of the plaintiff for $1,697.37
and costs.  Both parties have appealed, so we will refer to
them in this opinion as plaintiff and defendant instead of
appellant and respondent.

On February 21, 1903, the Independent Lumber Com-
pany, a corporation of which the plaintiff, Mark A. Munson,
was secretary, and in which he and one H. J. Bailey were
stockholders, executed and delivered to the defendant, Ameri-
can Savings Bank & Trust Company, its demand note for
$500, with said Munson as surety; and also pledged to said
defendant certain lumber as further security.  On March 23,
1903, plaintiff sold his stock in said Independent Lumber
Company to said H. J. Bailey, taking in payment two notes,
one for $500 and one for $1,500, secured by mortgage on
real estate in the city of Seattle.  Plaintiff immediately as-
signed said notes and mortgage to one P. C. Ellsworth, for
collection, who shortly thereafter commenced an action in his
own name to foreclose the same.  On April 21, 1903, the
defendant and said H. J. Bailey entered into a written con-
tract by which Bailey agreed to sell certain of said pledged
lumber and apply the proceeds on said $500 note, executed
by said lumber company, but the bank never received any
money from such sales.  Afterwards the plaintiff Munson
took charge of about 60,000 feet of said lumber, sold the
same, and applied the net proceeds, amounting to $289.42,
on the $500 Independent Lumber Company note.  About
this time the Independent Lumber Company passed into the
hands of a receiver and thereupon the defendant bank, hav-
ing learned that Munson had transferred said $2,000 notes
and mortgages to Ellsworth for collection, demanded that
plaintiff turn the same over to it as further collateral se-
curity.  Munson immediately caused the notes and mortgage

to be assigned to the bank by Ellsworth, with the understanding that the foreclosure should be completed by the bank. As the Munson mortgage was not the first lien, the bank with the consent of Munson proceeded to secure the prior liens by purchase, and also to obtain deeds for the mortgaged real estate in the name of James P. Gleason, its cashier. After some disbursements had been made for this purpose, Munson and the bank entered into a written agreement which reads as follows:

"This Agreement made and entered into this 29th day of October, A. D. 1903, by and between American Savings Bank & Trust Company, a corporation, and James P. Gleason, parties of the first part, and Mark A. Munson, party of the second part. Whereas American Savings Bank & Trust Company and James P. Gleason have advanced certain moneys in securing title to and in the purchase of mortgages, liens, judgments and various incumbrances upon lot twenty-two (22) in block four (4) of Capitol Hill Addition to Seattle, First Division, being property formerly owned by Edna Bailey, and in procuring the title to said property parties of the first part have incurred certain expenses and will be compelled to incur certain other expenses and to advance certain other moneys before the title to said property is fully completed; the exact amount of money necessary to be advanced and expenses to be incurred cannot at this time be specifically and definitely stated, and whereas, the Independent Lumber Co. and Mark A. Munson have become indebted to the American Savings Bank & Trust Co. by the making and endorsing of promissory notes in the sum of $500 and as security for such indebtedness the said Lumber Co. made a bill of sale of certain lumber of said company, the proceeds of the sale of which, after paying all expenses, costs and attorney's fees and other expenses, is entirely inadequate to liquidate the indebtedness of said lumber company and Mark A. Munson to the said bank, and the said Munson hereby promises and agrees to pay any balance due said bank after it applies the net proceeds of the sale of said lumber on such indebtedness, after first paying all expenses incurred by reason of the taking possession, moving, storing and selling of the same, as all costs, attorney's fees and other expenses whatever incident thereto;

together with interest on any balance due on said indebtedness, as in the notes evidencing same provided, it is therefore now agreed by and between the parties hereto that the said Mark A. Munson shall have the right and option at any time within eighteen months from this date to purchase the above and foregoing property by paying to the American Savings Bank & Trust Company the amount of money first parties have advanced, together with all expenses incurred, and for the purpose of acquiring the title to the said property and purchasing the judgments, liens and other incumbrances the said bank has set aside to the credit of said property a loan of $2,000 to draw interest at 8 per cent per annum, payable quarterly, and when such amount is fully paid out a further sum sufficient to take up all liens and indebtedness outstanding shall likewise be credited and such amount shall draw interest at 8 per cent per annum, payable quarterly, and from such credit shall be paid all indebtedness of said property and all expenses incident thereto, including attorney's fees, costs, etc., and that at any time within eighteen months from date hereof, if the said Mark A. Munson shall pay or cause to be paid to said bank the full amount of all money advanced with interest as herein stated and all indebtedness resulting from the obligations of said Independent Lumber Co. and Mark A. Munson to said bank as herein stated, then the said American Savings Bank & Trust Company and James P. Gleason, parties of the first part, will convey or cause to be conveyed to said Mark A. Munson the said property, to-wit, lot twenty-two (22), in block four (4) of Capitol Hill Addition to Seattle, First Division. It is further agreed upon the part of the parties of the first part that for the period of eighteen months from this date they will not sell or dispose of said property to any person other than said Mark A. Munson except by agreement with the said Mark A. Munson as to the price to be received for said property, it being the intention of this stipulation that the property shall not be sold during said eighteen months unless said Munson agrees to the price at which it may be sold. In witness whereof, etc."

The bank immediately proceeded in the matter of obtaining title to said real estate and foreclosing liens thereon. It purchased a prior mortgage known as the King mortgage, for $1,129.79. It purchased a prior outstanding sheriff's certifi-

cate of sale from Gordon & Company, for $503. It also paid $125 for deeds which conveyed the title to Gleason, who held the same for the bank. These and other disbursements were made with the full knowledge and consent of Munson. In the foreclosure action many persons were made defendants, and some of them by cross-complaints attempted to foreclose certain liens claimed by them. Munson was not a party to the foreclosure suit. Final decree was entered on April 2, 1904, and the following amounts were found to be due the bank:

On the King mortgage, principal and interest....$1,105.00
Attorney's fee...............  ...............  150.00
On the Munson mortgage, principal and interest.. 2,140.00
Attorney's fee................  ............  100.00
                                        _____
                                         $3,495.00

In the decree it was adjudged that the several defendants who had filed cross-complaints had no valid liens, and that Gleason held the fee title to said real estate subject to said mortgages. The lien claimants appealed to this court, but the judgment against them was affirmed. See, *Ellsworth v. Layton,* 37 Wash. 340, 79 Pac. 947. On September 24, 1904, the property was sold to the bank at sheriff's sale, its bid being $3,651.26, the exact amount then due on its judgment on the King and Munson mortgages, together with costs and accrued costs. Munson attended the sale and did not except to the bid made by the bank. No money was paid to the sheriff except $12.45, his costs, but the bank satisfied its judgment. Munson failed to exercise any election to take title to said property within the eighteen months stipulated in his contract with the bank, and after that period had expired the bank, exercising full acts of ownership, sold the real estate to a third party. Neither party to this action offered evidence to show the price for which the bank made said sale. No payment was ever made on the principal $500 note, except said $289.42 proceeds of lumber sold by Munson. A further

credit of $300 is claimed by Munson for lumber sold by Bailey as agent of the bank; although Bailey did not account for such sales. The trial court found against Munson on this issue, and upon this he bases his cross-appeal.

Munson's theory is that the $500 note has been fully paid; that his $2,000 mortgage notes assigned to the bank were also paid by foreclosure and sale; and that the bank is now liable to him for their full amount, they having been released from the pledge made by him. The trial court found that in making said bid of $3,651.26, at said foreclosure sale the defendant bank was acting in pursuance of its purpose and intention to purchase said mortgaged premises and become the absolute owner thereof. Having found such intention, the trial court held that the bank was obliged to settle with Munson on the valuation of $3,651.26, and after deducting from said sum the amounts due on the first mortgage, the balance due on said $500 Independent Lumber Company note, certain disbursements, expenses, costs, and $350 attorney's fee, gave Munson judgment for $1,697.31, but in doing so did not allow all the claims made by the bank. We think the theory upon which the trial court proceeded was correct (*Ross v. Barker,* 58 Neb. 402, 78 N. W. 730), but the final judgment should be modified as, according to our view of the evidence, the bank was not allowed the full amount to which it was entitled. The Munson notes and mortgage were pledged to the bank as additional collateral security for the payment of the Independent Lumber Company note. The fundamental rule pertaining to collateral securities is that, where a debtor has pledged to his creditor a mortgage on real estate to secure the payment of a note other than the mortgage debt, and the creditor or pledgee in the exercise of his equitable rights forecloses said mortgage, and thereby acquires title to the real estate in his own name, absolute as against the mortgagor, the pledgee holds such title as security for his debtor's note in lieu of the original mortgage, and the pledgee's interest in the land may be defeated

by payment of the pledgor's principal note. In other words, the pledgee holds the land to which he has thus acquired title in trust for the pledgor, and as security for the debt due from him. Jones, Pledges and Collateral Securities (2d ed.), § 659; *Brown v. Tyler,* 8 Gray 135, 69 Am. Dec. 239; *Jennings v. Wyzanski,* 188 Mass. 285, 74 N. E. 347.

When, however, there is an agreement between the parties that the pledgee may acquire title in his own right, and he does so at a fair valuation, openly, without fraud, with the knowledge and consent of the pledgor, and evinces an intention to hold the title so acquired for his own benefit and not in trust, a duty then devolves upon him to account to the pledgor for the valuation at which he so acquired the title. *Jennings v. Wyzanski, supra; Plucker v. Teller,* 174 Pa. St. 529, 34 Atl. 208, 52 Am. St. 825. In this case the defendant claims it had no intention of acquiring the title to the real estate for its own benefit. The trial court found, however, that it did so intend, and we agree with and adopt such finding. The written contract of October 29, 1903, clearly shows such intention. The Munson notes had already been assigned as collateral, before said contract was executed. The bank at once proceeded to acquire title by obtaining deeds to Gleason. It took immediate possession of the property. It collected the rents and, in an account with Munson, gave him credit therefor. It is true that the bank could not obtain an absolute title, as against Munson, within the period of eighteen months immediately succeeding the date of the contract. It could and did acquire title, however, subject to Munson's right to purchase on the terms named. When his option had expired, the title of the bank became absolute. Its subsequent conduct shows that it so understood the transaction, for it then sold to a third party and has not disclosed by its evidence the price it obtained. As far as the record discloses it may have either realized a profit or sustained a loss. No intelligent reason can be given for making the foreclosure sale on September

24, 1904, except the desire of the bank to complete its title
so that it might convey to a third party after the expiration
of the eighteen months, without continuing its mortgage or
judgment liens. It already had and held title in Mr. Glea-
son, its cashier, who testified that the price bid was agreed
upon between him and Munson, and this statement is not
disputed.

From all the circumstances of this case, we are convinced
that it was the intention of the bank to take the property at
$3,651.26, and retain the title in itself at such valuation, in
the event of the failure of Munson to exercise his option
within the eighteen months fixed by his contract, and that
Munson has assented to its doing so. This being true, the
bank should now settle with Munson on the basis of such
valuation. The bank could not know during the eighteen
months whether Munson would exercise his option, so dur-
ing that period it kept an account charging him with all
disbursements and giving him credit for rents collected. It
delivered to him a written statement of this account about
the time his option expired. He has taken no exception to
the items therein contained, except to an attorney's fee of
$350. In fact, his testimony shows that the disbursements
therein enumerated were made with his full knowledge and
consent. We think the $350 attorney's fee which the trial
court allowed was reasonable and should be now allowed.
This statement shows that, on September 24, 1902, the date
of the sheriff's sale, the bank had made proper disbursements
to the total amount of $2,422.43, which included $100 of
the attorney's fees. Additional items for which Munson was
at that time liable have been since paid, and the bank is en-
titled to retain the following sums out of the bid it made for
said real estate:

Disbursements to Sept. 24, 1904, as per statement.$2,422.43
Sheriffs' costs.........................................    11.95
Additional interest to September 24, 1904......    29.22

| | |
|---|---:|
| Witness fees | 2.20 |
| Clerk's costs, Kidder v. Bank | 6.00 |
| Attorney's expenses to supreme court | 9.50 |
| Remainder of attorney's fee | 250.00 |
| Filing remittitur | 1.00 |
| Balance due on Independent Lumber Co.'s note | 265.28 |
| | $2,997.58 |

From the time the bank took possession of the property until the 24th of September, 1904, the date of the sheriff's sale, it collected $340 in rents. It also collected $55, supreme and superior court costs, for which it should account to the plaintiff. We therefore find the plaintiff entitled to $340 rents and $55 costs collected, being $395 in all, as he has been charged with interest, taxes, insurance and, in fact, all disbursements made on account of the property. Deducting this $395 from the charges of the bank, which amount to $2,-997.58, leaves $2,602.58 as the net charges the bank is entitled to make against Munson. Deducting this sum from $3,651.26, the bid made for the property, we find the sum of $1,048.68 to have been due the plaintiff on September 24, 1904. The plaintiff is entitled to judgment against the bank for said amount, with interest from that date. This allows the bank all costs expended, $350 attorney's fee; $503 paid Gordon & Company, not allowed by the trial court; $125 paid for title deeds not allowed by the trial court; also insurance, taxes, recording fees, and, in fact, all expenses shown by the bank's statement prior to September 24, 1904, and to which Munson did not object. It does not allow plaintiff any credit for the lumber claimed to have been sold by Bailey, as we do not think that claim has been sustained by the evidence. The defendant by its assignments of error and in its briefs has contended that the complaint does not state a cause of action, that the trial court erred in overruling its demurrer thereto, and that the plaintiff has no right to maintain this action or recover any judgment herein. Each and all of

these contentions are without merit, and in view of what we have already said, we think it unnecessary to further discuss them in this opinion.

It is ordered that the judgment of the trial court be modified by entering judgment in favor of the plaintiff and against the defendant for $1,048.68, with interest from September 24, 1904, at six per cent per annum. It is further ordered that the plaintiff recover costs in the superior court, and that the defendant recover its costs in this court.

MOUNT, C. J., ROOT, DUNBAR, and HADLEY, JJ., concur.

RUDKIN, J. (dissenting)—I think the written contract set forth in the majority opinion was intended to supersede all prior agreements express or implied between the parties thereto, and that if the plaintiff has any right of action it is by reason of said written contract. I therefore dissent.