WHEELER *v.* ST. PAUL CRUSHED STONE COMPANY.

[No. 23,448.   Filed June 30, 1921.]

1.   CORPORATIONS. — *Contracts.* — *Construction.* — *Pledgor and Pledgee.*—*Corporate Bonds.*—Contracts between persons interested in a speedway enterprise and materialmen, whereby corporate bonds were placed in the hands of materialmen as collateral surety to a note given for materials, *held* to create the relation of pledgor and pledgee, which relation was not changed by reason of the vesting of the title to the property in the trustee in a mortgage on foreclosure of such mortgage. p. 81.

2.   CORPORATIONS.—*Pledgee Not Entitled to More than Debt.*— *Bonds as Collateral Security.*—A pledge of corporate bonds

as security of a note would not be entitled, after foreclosure of the mortgage given to secure the bonds, to retain a greater sum of money than would fully pay the note for which the bonds were pledged as collateral. p. 81.

3. BONDS.— *Trustee Acting for Bondholders.— Foreclosure of Mortgage.—Rights of Pledgor.—*The foreclosure of a mortgage by a trustee named in such mortgage as trustee, *held* to affect only the bonds and not to affect in any way the pledgor's equity in the bonds or his interest in the property representing the bonds. p. 82.

4. BILLS AND NOTES.—*Pledges.—Creditor Need Not Follow Collateral.—*The payee of a note secured by corporate bonds pledged as collateral security need not follow the collateral, but may proceed against the maker of the note. p. 83.

5. APPEAL.—*Review.—Harmless Error.—Exclusion of Evidence.* —Error, if any, in the exclusion of evidence is harmless, where it would have been cumulative and the facts it tended to prove fully appear in other evidence. p. 83.

6. TRIAL.— *Questions of Law.— Construction of Foreign Statutes.—Decisions of Foreign States.—*The introduction of statutes of foreign states and decisions of the appellate court of such state in relation thereto did not tender an issue of fact, but one of law for the court. p. 84.

From Marion Superior Court (105,298) ; *Theophilus J. Moll,* Judge.

Action by the St. Paul Crushed Stone Company against Frank H. Wheeler. From a judgment for plaintiff, the defendant appeals. *Affirmed.*

*Myers, Gates* and *Ralston,* for appellant.

*Butler, Mitchell* and *Doherty, Samuel O. Pickens, Charles W. Moores, R. F. Davidson* and *Owen Pickens,* for appellee.

MYERS, J.—This was an action by appellee against appellant to enforce payment of a certain promissory note executed by appellant and others as makers. Appellant's co-makers were not residents of this state and were not made parties. The complaint, answer in five paragraphs, and reply of general denial, formed the issues submitted to a jury for trial. Upon the conclusion of all the evidence, appellant's motion to submit the

cause to the jury under the court's instructions was overruled, and appellee's motion to direct the jury to return a verdict in its favor for the amount of the note with interest at six per cent. per annum from date thereof, without credit or discount, was sustained. The jury was then orally directed by the trial court to return a verdict for appellee, which it did, in the sum of $10,850.05. On February 7, 1918, the court rendered judgment against appellant in favor of appellee for $10,850. Appellant's motion for a new trial, supported by fifty specifications, was overruled. The various errors assigned and relied on by appellant challenged the action of the trial court: (1) in sustaining a demurrer to one of its paragraphs of answer for want of facts; (2) in directing a verdict in favor of appellee; (3) in overruling his motion for a new trial.

After due consideration of this case as presented by the oral argument and briefs of counsel, we conclude that no good purpose will be subserved by a lengthy statement of the pleadings or of the evidence, although the court's ruling in directing a verdict for appellee was grounded upon the evidence. However, to state the case generally, it appears that appellant and others interested in constructing a motor speedway near the cities of Minneapolis and St. Paul, Minnesota, contracted with appellee for a quantity of crushed stone for use in that work. The stone was furnished and used, and appellee took a materialman's lien on the property of the speedway company, a corporation of Minnesota known as the Twin City Motor Speedway Company. That company on November 1, 1915, created bonds of the aggregate face value of $350,000, and, to secure the payment thereof, it executed a mortgage or trust deed on all of its property, payable to and deposited the same together with the bonds with the Minneapolis Trust Company as trustee. On January 15, 1916, appellant and certain

other persons interested in the speedway enterprise executed to appellee the note which is the foundation of this action. At the time and concurrent with the execution of the note, appellant, with others, executed the following instrument:

"Know all men by these presents, that the undersigned hereby transfer, mortgage and pledge to St. Paul Crushed Stone Company bonds of the Twin City Motor Speedway Company, of the par value of .........................Dollars, ($9800.00), numbered ............, as collateral security for the payment of a promissory note bearing date January 15th, 1916, made by James F. Sperry, Henry E. L. Habighorst, C. W. Van Orsdol and F. H. Wheeler, as makers, to St. Paul Crushed Stone Company, as payee, due July 1st, 1916, in the sum of $9,769.04. In the event of default in the payment of said promissory note, or the interest thereon, the pledgee hereunder may foreclose this pledge and sell the bonds herein described for the purpose of satisfying said indebtedness in the manner prescribed by the Statutes of the State of Minnesota relating to the foreclosure of chattel mortgages.

In the event of payment of said note, by the undersigned Pledgor, or Pledgors, either or any of them, said bonds shall be delivered to the Pledgor or Pledgors, so paying said note and the Pledgee herein is hereby authorized to deliver said bonds to the Pledgor or Pledgors so satisfying said promissory note.

James F. Sperry,
F. H. Wheeler
By Seymour Avery,
Attorney in Fact,
H. E. L. Habighorst,
C. W. Van Orsdol.

In presence of
Milford E. Rumble
H. M. Smith."

The mortgage, among other things, stipulated that:

"If default shall be made in the principal or interest of said bonds, or any thereof, and such

default shall continue for a period of three (3) months * * * the Trustee may elect at its option, or upon the written request of at least twenty-five thousand dollars in amount, of the holders of said bonds then outstanding, that the principal sum of each of said bonds, together with the interest accrued thereon, shall be immediately due and payable, and may enforce payment thereof. * * * It is hereby declared and agreed that it shall be the duty of the Trustee * * * to take appropriate proceedings in equity or at law, to enforce the rights of the bondholders under these presents, in case of any default made in the terms or conditions of this mortgage, or of the bonds or interest secured hereby, which default shall have continued for a period of three months, upon the written request, however, upon said Trustee, of the holders of not less than twenty-five thousand dollars in amount of the bonds then outstanding. * * * * "

On August 16, 1916, appellant and others, holders of more than $25,000 in amount of the series of bonds pledged to appellee, filed with the trustee under the mortgage their written request for its foreclosure by reason of certain defaults of the mortgagor, and on September 12, 1916, the trustee instituted a suit to foreclose the mortgage as to all the bonds of that issue. The complaint alleged various defaults of the conditions of the mortgage, request by the holders of more than $25,000 of the bonds outstanding, the election by the trustee to declare all the bonds outstanding due, and its election to foreclose the mortgage. A decree of foreclosure was entered December 29, 1916. The property covered by the mortgage was sold, bid in by the trustee for $250,000, and the sale confirmed by the court on March 5, 1917. There was a stipulation in the mortgage that in case of a foreclosure and sale and purchase by the trustee of the mortgaged property, the trustee, after the period of redemption, should take

the title in fee simple for the benefit of the holders of the bonds.

Appellant's various contentions in support of each assignment of error, when analyzed, all lead to the one question, namely: Was he entitled to a credit of $7,027 on the note? The decision of this question is largely controlled by the written instrument which each of the parties concede to be what its stipulations indicate—a pledge contract. Appellant is basing his defense upon the theory that this agreement and the delivery of the bonds to appellee entered into the consideration for the execution of the note, and the three acts constituted one entire indivisible contract with an inseparable consideration, whereby appellant became bound as surety only for the payment of the bonds which, upon the sale of the mortgaged property, were, as a matter of law, credited with their *pro tanto* part of the purchase price of the mortgaged property. Citing—*Warren* v. *Fish* (1862), 7 Minn. 432 (Gil 347) ; *Sergeant* v. *Ruble* (1885), 33 Minn. 354, 23 N. W. 535.

Several sections of the Minnesota statute relating to the procedure in the foreclosure of mortgages, sale of mortgaged property, and confirmation of such sale by the court, were introduced in evidence, but in so far as they are material here, we confine our attention to the sections of the statute which provide that the bidding in of the property by the creditor at the sale "shall have the same effect as a receipt for money paid upon a sale for cash," and upon the confirmation of the report of sale "the clerk shall enter satisfaction of the judgment to the extent of the sum bid for the premises, less expenses and costs." §§8156, 8159, 8160 Gen. Stat. Minn. 1913.

The note in this case matured on July 3, 1916, and this action was begun January 8, 1917. It is not claimed that appellee did anything in the way of a

request upon the trustee to foreclose the mortgage, nor that it has taken any steps to enforce the pledge agreement, nor that it realized any money from the foreclosure sale, nor that it received any money or property for which appellant should have credit on the note, unless the bidding in of the property at the foreclosure sale by the trustee had the effect of vesting in the pledgee of the bonds a *pro tanto* interest in the property on the basis of value for which it was thus sold to the trustee.

If through the foreclosure proceedings the speedway property should vest in the trustee, then, under the law of Minnesota the speedway company would be entitled to a credit of $250,000 on its bonded indebtedness and the trustee, under the provisions of the mortgage, would hold the property so acquired for the benefit of the bondholders in the proportion that the bonds held by each of them bears to the entire issue outstanding. Or in other words, the bondholders must be regarded as having accepted the property bid in by the trustee as a credit on the bonds of that issue outstanding in the sum of $250,000. Clearly then, the foreclosure proceedings affected only the speedway company and the bondholders.

The question then is: Was the appellee, under the circumstances here appearing, a bondholder in the sense that it was compelled to accept an interest in 1, 2. the property bid in by the trustee as a *pro tanto* satisfaction of appellant's note? As between appellant and appellee, the contract under which appellee held the bonds created the relation of pledgor and pledgee, and this relation was not changed by reason of the vesting of the title to the property in the trustee. As to that property, the bonds were the evidence of the holders' right to participate in the proceeds arising

from the sale thereof, but in no event would appellee, on its surrender of the bonds to the trustee, be entitled to retain a greater sum of money than would fully pay the note for which the bonds were pledged as collateral. *Hoyt* v. *Martense* (1857), 16 N. Y. 231; Matter of Gilbert (1887), 104 N. Y. 200, 10 N. E. 148; Jones, Collateral Securities (3d ed.) §659; *Union Trust Co.* v. *Hasseltine* (1909), 200 Mass. 414, 86 N. E. 777, 16 Ann. Cas. 123; *Munson* v. *American Sav. Bank, etc., Co.* (1906), 43 Wash. 549, 86 Pac. 1047.

In the case last cited, it was said: "The fundamental rule pertaining to collateral securities is that, where a debtor has pledged to his creditor a mortgage on real estate to secure the payment of a note other than the mortgage debt, and the creditor or pledgee in the exercise of his equitable rights forecloses said mortgage, and thereby acquires title to the real estate in his own name, absolute as against the mortgagor, the pledgee holds such title as security for his debtor's note in lieu of the original mortgage, and the pledgee's interest in the land may be defeated by payment of the pledgor's principal note. In other words, the pledgee holds the land to which he has thus acquired title in trust for the pledgor, and as security for the debt due from him."

In the instant case we have no question arising on account of the activity of appellee in connection with the pledged property, as was the case in *Plucker* v. *Teller* (1896), 174 Pa. 529, 34 Atl. 208, 52 Am. St. 825, and *Anderson* v. *Olin* (1893), 145 Ill. 168, 34 N. E. 55.

It is true, as claimed by appellant, that appellee was bound by the terms of the mortgage, by the foreclosure proceedings and the amount of the purchase.

3. But in this respect, we may add, it was the bonds only that were affected by the action of the trustee acting for the bondholders. The collateral, orig-

inally in bonds, was by that proceeding to a certain extent merged in the property held by the trustee. This substitution in no wise affected appellant's equity in the bonds or his interest in the property representing the bonds.

Appellant also seeks to charge appellee with having pursued inconsistent remedies, but in order to do so he seeks to make appellee responsible for the course 4. taken by the trustee. This cannot be done. The trustee acted independently of appellee and, we may say, at the direction of appellant. There is no claim of want of diligence on the part of appellee in any particular and, as we read the record before us, appellee has not sought to follow the collateral, but has consistently proceeded against the makers of the note, as was its right so to do. *Olvey* v. *Jackson* (1886), 106 Ind. 286, 4 N. E. 149; *Mills* v. *Gould* (1860), 14 Ind. 278.

Appellant insists that the court erred in refusing to permit him to show that the bonds in question were delivered by the speedway company to the trust 5. company as trustee, and by the trust company to appellee, and that he nor any of the other makers had any interest in the bonds until they were delivered to appellee in connection with the execution of the note and pledge agreement. It is claimed that this testimony was admissible for the purpose of disclosing appellant's relation not only to appellee but as tending to show that the bonds were not only held by appellee as collateral but that they also stood as an indemnity to the makers of the note who might pay the same. This evidence, if admitted, would have been cumulative, as the facts which it would have tended to prove fully appear from other evidence in the record, and consequently appellant was not harmed by its exclusion, Moreover, we fail to see the materiality of the proposed evidence, for the reason there is no contro-

versy involving the ownership or adjustment of rights in the bonds, other than a claim by appellant of credit on the note which the court, under the circumstances, properly refused to allow.

As to the evidence admitted over appellant's objection, it is sufficient to say that we have examined each item thereof, and, without taking the time and space to consider it in detail, we are well satisfied that the court committed no error in this regard for which the judgment herein should be reversed.

The question presented on the court's action in directing a verdict presents for decision the effect to be given the Minnesota statutes and the two decisions of the Supreme Court of Minnesota, which appellant introduced in evidence in support of his answers of payment and partial payment of the note in suit. If this evidence is to be considered as tendering an issue of fact, it would follow that the court erred in directing a verdict. However, we do not so regard this evidence, for if it is to be given the effect claimed for it by appellant, or if it was not to have that effect, it was the duty of the court to say so, and to so instruct the jury as a matter of law. This evidence was before the court. It was undisputed. Its effect as a matter of law, and as applied to the foreclosure proceedings by the trustee, was to allow or disallow a *pro tanto* credit on the note. That question, under all of the circumstances here appearing, was for the court to decide, and its decision either way would determine the rights of the parties and warrant the court in taking the case from the jury. Hence, when the court directed the jury to return a verdict for appellee, it is evident that its action in that respect was based upon the law of Minnesota, as determined from the evidence adduced at the trial.

From our examination of the record in this case and the questions presented by appellant, we are satisfied that no error has intervened justifying this court in reversing the judgment.

·The death of appellant since the submission of this cause has been suggested. The judgment, therefore, is affirmed as of the date of submission.