In the Matter of the Estate of EDWIN GILBERT, Deceased.

An order of a surrogate, adjudging against the denial of an administrator, that there are assets of the estate in his hands, and requiring him to account therefor, is an order affecting a substantial right, and so is appealable to the General Term. (Code of Civil Procedure, § 2570.)

It is not essential to such an appeal that the order be a " final " one, as is requisite to authorize a review thereof in this court. (§ 190.)

Where the mortgage of a third person has been assigned by the mortgagee as collateral for his own debt, the foreclosure of the mortgage and purchase at the foreclosure sale by the assignee, as against the assignor, where the latter is not made a party to the foreclosure and his equitable right foreclosed, simply substitutes the land for the mortgage and the assignee holds it as a security merely, subject to the right of the assignor to redeem by payment of the debt, and upon such payment he is entitled to the land.

*Bloomer* v. *Sturges* (58 N. Y. 168) distinguished and limited.

The doctrine of merger does not apply in such case, as in equity merger will never be allowed against the interest of the parties or their obvious intention, or where the two estates are held in different rights.

T. applied to G. and two others for a loan to a corporation. This they refused, but an agreement was made, under which they loaned the money to T., taking his notes therefor. T. loaned the money to the corporation, taking its notes therefor, corresponding in the times of payments and amounts with those given by T. which were secured by mortgage on real estate of the corporation; these were assigned by T. as security for the loan. G. died and T. was appointed one of his administra-

tors.   He subsequently received another mortgage from the corpora-
tion on other lands, which he also assigned as collateral for the
loan.   This last mortgage was foreclosed by advertisement by the two
surviving assignees and the administrators of G.   The premises
were bid off by the administrators, who, however, paid no money on
the purchase. · The interest of G. in the notes given by T. was set forth
as assets in the inventory of his estate, and on final settlement of the
accounts of the administrators, it appeared that such interest had been
paid in full by T. and the accounts were so settled.   Subsequently, the
administrators joined in a deed of the said premises to a son of T., who
conveyed the same to his father.   In proceedings to compel T. to account,
as administrator, for the proceeds received by him on sale of said lands,
*held*, that on payment of the debt to the estate, T. was entitled to the
land ; that the fact that, as administrator, he was party to the fore
closure did not affect his equities; and that, therefore, he could not be
compelled to account for such proceeds.

It was claimed that by the agreement of the parties the estate was entitled
to a greater rate of interest than was called for by the notes, or was
accounted for by the administrator.   *Held*, that such a claim could not
survive the settlement of his accounts, as it should then have been
asserted.

(Argued December 15, 1886 ; decided January 18, 1887.)

APPEAL from judgment of the General Term of the
Supreme Court in the fifth judicial department, entered upon
an order made January 5, 1886, which reversed a decree of
the surrogate of the county of Ontario, requiring George
Thayer, as surviving administrator of the estate of Edwin
Gilbert, to render a further account, particularly as to the
proceeds arising from the sale by him of certain real estate.
(Reported below, 39 Hun, 61.)

In 1859, said Thayer applied to Gideon Pitts, Perez R. Pitts
and said Gilbert to make a loan to the Little Falls Manu-
facturing Company, a Minnesota corporation, this they declined
to do, but an arrangement was made by which they loaned
$3,000, taking the notes of Thayer, one for $1,000, dated
October 1, 1859, payable two years from date, and one for
$2,000, dated November 1, 1859, payable three years from
date.   The corporation executed to Thayer its notes cor-
responding in amount, date and time of payment secured by a

mortgage on real estate in Minnesota, situate on the east side of the Mississippi river. These notes and the mortgage Thayer assigned to the Messrs. Pitts and Gilbert as collateral security for his notes. The assignment provided that on the full payment of said notes it was to be void and of no effect. Mr. Gilbert died intestate in April, 1861. In November, 1861, the said company executed to Mr. Thayer another mortgage on other lands owned by it situate on the west side of the Mississippi river to secure its note for $1,000, which was given for $500, money loaned, the balance for interest unpaid on the old notes. In August, 1862, Thayer assigned this note and mortgage to the Pitts and the administrators of the estate of Gilbert as further security for the said notes; the assignment containing provisions similar to those in the first assignment. In December, 1862, proceedings were instituted in the names of the Messrs. Pitts and of the administrators of the estate of Gilbert to foreclose the last mortgage by advertisement under the laws of the State of Minnesota, and upon sale the property was bid off by said administrators. No money, however, was in fact paid by them. The administrators assigned their interest in the other mortgage to the Messrs. Pitts, who foreclosed the same by action in 1863, and on sale in January, 1864, Thayer purchased the mortgaged premises. In the inventory of the estate of Gilbert his one-third interest in the three notes given by Thayer was entered, but no mention was made of the notes or mortgages given by the corporation. On final settlement of the accounts of the administrator, it appeared that Thayer had paid his notes in full and he was credited with the interest of the estate therein. In May, 1864, the administrators deeded the lands so bid in by them to a son of Mr. Thayer, who conveyed the same to his father. No consideration being paid for either conveyance. Mr. Thayer subsequently sold the premises for $37,000. Other facts appear in the opinion.

*E. G. Lapham*, for appellants. The property sold to the administrators on the 16th day of February, 1863, became

the property of the estate and should have been sold and accounted for as such, and the proceeds of the recent sales are assets in the hands of the respondent, for which he is liable to account. (*Valentine* v. *Belden*, 20 Hun, 537; Redf. on Surrogates, 502, 505; *Lockman* v. *Reilly*, 95 N. Y. 64; Code of Civ. Pro. § 2472, subd. 3; *Clark* v. *Clark*, 8 Paige, Ch. 152; *Stiles* v. *Burch*, 5 id. 135.) The order of the surrogate that the respondent render a further account as administrator is not appealable at this stage of the proceeding. It is an interlocutory order, and the questions which naturally and properly arise can only be determined when a final decree or judgment shall have been made by the surrogate fixing the liability of the respondent to the petitioners. (Code of Civ. Pro., §§ 2570, 2717, 2718, 2723; *Hurlburt* v. *Durant*, 88 N. Y. 122; *Riggs* v. *Cragg*, 89 id. 479; *In re Halsey,* 93 id. 48.) The respondent, after the foreclosure of the mortgage on the west side of the river, and the purchase by him, as administrator of the premises, embraced therein for a less sum than was due the estate, could not by his voluntary act change the title to himself as an individual or pay the debt satisfied by the sale. (*Hawks* v. *Hinchcliff*, 17 Barb. 492; *Prouty* v. *Eaton*, 41 id. 409; *Hood* v. *Adams*, 124 Mass. 481; *Barnard* v. *Onderdonk*, 98 N. Y. 158; *Michoud* v. *Girod*, 4 How. [U. S.] 503; *Scholle* v. *Scholle*, 101 N. Y. 167; *Slee* v. *Manhattan Co.*, 1 Paige, 48; *Dalton* v. *Smith*, 86 N. Y. 183; *Hoyt* v. *Martense*, 16 id. 231; *Bloomer* v. *Sturges*, 58 id. 168; Wiltsie on Foreclosure, §§ 14, 15, 78; *Carpenter* v. *O'Dougherty*, 67 Barb. 397; Colebrook on Collateral Securities, 181.) It was the duty of the respondent to have included in his inventory the collateral securities, and to have embraced in his account rendered a statement of what had been done with them. (*In re Butler*, 38 N. Y. 397; *Griffith* v. *Godey*, 113 U. S. Sup. Ct. 89.) No statute of limitations began to run against the petitioners until they were notified of the facts. (Code, §§ 382, 410; *Drake* v. *Wilkie*, 30 Hun, 537; *Reitz* v. *Reitz*, 80 N. Y. 538; *Ferris* v. *Van Vechten*, 73

id. 113; *Carr* v. *Thompson*, 87 id. 160; *Wood* v. *Rusco*, 4 Redf. 380; *Decouche* v. *Savetier*, 3 John. Ch. 190; *Robinson* v. *Robinson*, 5 Lans. 169; *Bronson* v. *Munson*, 29 Hun. 54; *Griffith* v. *Godey*, 113 U. S. 89; *Price* v. *Mulford*, 36 Hun. 247; *People* v. *Open Board*, 92 N. Y. 104; *Phillipi* v. *Phillipi*, 115 U. S. 151; *Oliver* v. *Pratt*, 3 How. [U. S.] 333; *Meade* v. *Norton*, 11 Wall. 442.) As the respondent by his acts and admissions has invited this investigation, he should pay costs in case of reversal, but in no event should the petitioners be subjected to costs. They rest entirely in the discretion of the court. (Code, §§ 2558, 2589; *Pattison* v. *Hull*, 9 Cow. 747; *Van Riper* v. *Popenhausen*, 43 N. Y. 68; *Kreitz* v. *Frost*, 55 Barb. 474; *Phelps* v. *Wood*, 46 How. Pr. 1.)

*William F. Cogswell* for respondent. The decree of the surrogate was appealable and the appeal brought up for review the decision upon which it was based. (Code Civ. Proc. §§ 2550, 2568, 2570; *Fiester* v. *Shephard*, 26 Hun, 183; S. C., 92 N. Y. 251.) Having paid the debt of his principal, Mr. Thayer was entitled to all the securities held by the creditor and to be subrogated to his right thereto. This right of subrogation does not rest upon the contract relation of the parties, but upon general principles of equity. (*Matthews* v. *Aiken*, 1 N. Y. 595; *Corey* v. *Leonard*, 56 id. 494; *First Nat. Bk.* v. *Wood*, 71 id. 405; *Townsend* v. *Whitney*, 75 id, 425.) The administrators of the estate of Edwin Gilbert, deceased, held the land after the foreclosure as collateral security for the notes of Mr. Thayer the same as they held the mortgage before the foreclosure, and not otherwise; and upon the payment by Mr. Thayer of his note to the estate he was entitled to have his land restored to him. (*Slee* v. *Manhattan Co.*, 1 Paige, 48; *Hoyt* v. *Martense*, 16 N. Y. 231; *Dalton* v. *Smith*, 86 id. 176; *Case* v. *Carroll*, 35 id. 385; *Terrett* v. *Crombie*, 6 Lans. 82; S. C., 55 N. Y. 683; *James* v. *Morey*, 2 Cow. 246; *Day* v. *Mooney*, 6 T. & C. 382; *Franklin* v. *Hayward*, 61 How. 43; *Smith* v.

*Roberts*, 62 id. 196; *Benedict* v. *Holliday*, 3 Week. Dig. 420; *Smith* v. *Holbrook*, 1 Sheld. 474; S. C., 82 N. Y. 562; *Lisle* v. *Herbs*, 25 Hun, 485.) The proceedings were barred by the statute of limitations. (*Miner* v. *Beekman*, 50 N. Y. 337; *Hubbell* v. *Sibley*, id. 468; *Hubbell* v. *Medbury*, 53 id. 98; *Humbert* v. *Trinity Church*, 24 Wend. 587; *Foot* v. *Farrington*, 41 N. Y. 164; *Carr* v. *Thompson*, 87 id. 160, 164; *In re Cole*, 34 Hun, 320.) The decree of the surrogate on the judicial settlement of the account of the administrators of Mr. Gilbert was conclusive evidence of the payment of all indebtedness from Thayer to the estate. (*Stiles* v. *Birch*, 5 Paige, 132; *Churchill* v. *Prescott*, 3 Bradf. 233; *Gill* v. *Brower*, 37 N. Y. 549, 551, 552.) The surrogate had no jurisdiction of the subject of this inquiry (*Fulton* v. *Whitney*, 66 N. Y. 548; *Bevan* v. *Cooper*, 73 id. 317, 327; *Seaman* v. *Whitehead*, 78 id. 306; *Hurlburt* v. *Durant*, 88 id. 121; *Fiester* v. *Shephard*, 92 id. 251.)

FINCH, J. The order of the surrogate directing the defendant to account for the proceeds of the land in controversy was appealable to the General Term, and that tribunal did not err in reversing the judgment instead of dismissing the appeal. Such an appeal is permitted where the order "affects a substantial right." (Code Civ. Pro., § 2570.) It need not be a "final" order as becomes an essential inquiry when the jurisdiction of this court is invoked (*In re Halsey* 93 N. Y. 48), but whether such or not, is subject to review by the General Term if it involves a substantial right. That was the character of the order appealed from. It went beyond a mere direction to account where assets are admitted and their amount is the sole controversy, and adjudged, against the defendant's denial, that there were assets and settled the only substantial point of the litigation except the amount of damages to be awarded. In *Fiester* v. *Shephard* (26 Hun, 183; 92 N. Y. 251), there was an order to account which the General Term reversed, and which we deemed appealable. That order determined the disputed right of the petitioner under the will and so

involved a substantial right of each party to the controversy

The main question involved in the appeal was carefully considered by the General Term, and, but for its interest and importance, and the alleged doubt clouding the opinions of this court upon the subject, might justly be allowed to rest upon the argument which prevailed with that tribunal.

It is quite necessary at the outset to clear the facts of a possible ambiguity. The contention of the appellants depends largely upon the theory that Gilbert stood as creditor of the Little Falls Company for a loan of $1,000, secured by a mortgage of that company upon the land in controversy, and Thayer was simply a guarantor of that loan in consideration of a certain proportion of a large rate of interest agreed to be paid. If that was the conceded situation, it is not impossible that the doctrine of subrogation might reach far enough to leave us still confronting the question principally discussed, but we need not pursue that inquiry since we are thoroughly satisfied that the case must stand upon a different relation of the parties which was deliberately fixed and chosen by themselves.

Three persons, Gideon Pitts, Perez R. Pitts and Edwin Gilbert, the defendant's intestate, loaned to George Thayer, the defendant, $3,000, taking his two notes, one for $1,000, dated October 1, 1859, payable in two years with interest. and one for $2,000, dated November 1, 1859, payable in three years from date with interest. It is undoubtedly true that Thayer borrowed this money to lend it in turn to the Little Falls Company. He had made application for a loan to that corporation which the lenders had refused, but at the same time intimating a willingness to take him as their debtor for the amount. . This fact the surrogate expresses in his second finding in a somewhat ambiguous form, but not at all inconsistent with the further facts which he finds and with the papers executed to carry out the arrangement. The original proposition for a loan to the company was for $5,000. This, the surrogate says was refused, but he adds that the lenders " were willing to loan the sum of $3,000, *provided* the se

Thayer would guarantee, *or become responsible for the same.*"
How that responsibility was to be assumed or what form it
should take, the surrogate does not determine, except as he
finds the form that it *did* take, and that form is a direct loan to
Thayer in the first instance, making him the primary and sole
debtor to the lenders, and leaving him to deal with the corpo-
ration as he pleased, save that the finding may leave room for
a possible inference that if Thayer secured on his loan to the
corporation an interest of fifteen per cent, he should allow to
the lenders an interest of ten per cent.    The defendant made
such loan, and took from the Little Falls Company their notes
corresponding with those given by Thayer to his creditors in
dates and amounts and periods of maturity, but providing for
interest at fifteen  per cent, payable semi-annually.    These
notes were secured by the company's mortgage to Thayer of
their real estate on the east side of the river, dated two days
earlier than the date of the October note.    There the matter
rested, with the rights and relations of the parties thus fixed,
for a period of more than four months.    On the 4th of
February, 1860, Thayer assigned his notes and mortgage
against the company to his lenders as collateral security for
his own debt to them.    The assignment is in writing, and is
proved to have been prepared by Gilbert and written by him.
There is no room for misunderstanding the fact it establishes.
It recites the debt of Thayer to the original lenders, describing
by dates and amounts the notes he had given, and transfers
as security for that debt the mortgage and notes of the com-
pany, expressly providing that on payment of his own notes
the assignment should be void and of " none effect."    It is
not possible in the face of this deliberate instrument, in the
handwriting of Gilbert himself, to transform the declared
relation into a primary indebtedness of the corporation to him
and his associates, simply guaranteed by Thayer, and there
is no equity in this claim, which has slept for almost a quarter
of a century until changing values have given it great value,
such as to justify a struggle to turn it into something different
from the form which it deliberately assumed.    In May,

1861, Gilbert died and Thayer and the widow became administrators of his estate. In the inventory which they filed no mention is made of the Little Falls Company's notes and mortgage, but the debt of Thayer to Gilbert is included. In the original loan of $3,000, each of the three parties furnished one-third and Thayer's debt to the amount of $1,000 was the property of Gilbert. We find in the inventory accordingly one-third of the note of October, 1859, and one-third of that of November, 1859, credited to the estate as assets and due to the estate from Thayer. There was a third note of earlier date for $224.09, inventoried as due from him. The final settlement of the accounts shows that all three notes were paid to the estate, the one last mentioned in 1862, and the other two May 30, 1863. Soon after the death of Gilbert the Little Falls Company gave to Thayer another mortgage, but upon its property on the west side of the river, dated November 26, 1861, and conditioned to secure the payment of $1,000 in one year with interest at twelve per cent, payable semi-annually, The consideration of this mortgage was a new loan to the company by Thayer to about one-half of the amount, the remaining half securing arrears of interest on the existing debt to him, and this, the west side mortgage, was assigned to the three creditors of Thayer as collateral security for his debt to them precisely in the same manner as the first, or east side mortgage. These transfers, in legal effect, were each a mortgage of a mortgage or a pledge of a mortgage. The assignees got only a defeasible title, subject to destruction by the payment of the debt at any time before the rights of the assignor were foreclosed or extinguished. Both mortgages were foreclosed and on a sale the lands were purchased by the administrators of Gilbert. The second or west side mortgage was foreclosed by advertisement, the two Pitts and the representatives of Gilbert appearing as mortgagees, the sale taking place February 16, 1863, and under the law of Minnesota one year thereafter being allowed for redemption by the mortgagor, in default of which the equity became extinct. The east side mortgage was foreclosed by a suit in equity in the name of

the Pitts, as plaintiffs, to whom for convenience the right of the estate had been transferred, but to neither foreclosure was Thayer a party in his individual character. In the equity suit he was not a party in any capacity and in the foreclosure by advertisement he is affected no further than his action as a foreclosing mortgagee as administrator of the Gilbert estate would involve.

The property now in controversy is that covered by the second or west side mortgage, and, after the payment by Thayer of his debt to the estate, was conveyed by him, as administrator, and by Mrs. Gilbert, as administratrix, to a third person, who in turn conveyed it to Thayer, who has since sold it for large sums. Are those proceeds his own, or do they constitute assets in his hands belonging to the estate of Gilbert ?

Necessarily they must belong to either the assignor or assignee, for by the foreclosure the equity of the mortgagor was effectually cut off and destroyed. The claim of the assignee is founded upon the purchase under that foreclosure, by the administrators of Gilbert, and is that an absolute title passed to the estate which was not and could not be transferred by the deeds to Thayer, and so the lands are to be treated as personal assets and accounted for to the next of kin.

Two cases have substantially determined, as the doctrine of this court, that where the mortgage of a third person has been assigned by the mortgagee as collateral security for his own debt, the foreclosure of that mortgage by the assignee and his purchase at the sale, as against the assignor, work no other result than to substitute the land for the mortgage in the hands of the assignee, and to leave it subject to the assignor's right by payment of the debt to reclaim and hold his own property discharged of the assignee's lien upon it. (*Slee* v. *Manhattan Co.*, 1 Paige, 48 ; *Hoyt* v. *Martense*, 16 N. Y. 231.) Of course these cases assume that upon the foreclosure the equitable right of the assignor was not involved by making him a party and foreclosing such right, but deal with the result where the right survives the foreclosure ; and

they were subsequently criticised by suggestions to which our attention is invited. (*Bloomer* v. *Sturges*, 58 N. Y. 168.) In that case the court held that the assignor, defendant, was so made a party defendant in the foreclosure action, that its equity, as well as that of the mortgagor, was involved in the judgment and extinguished by the sale. Of course that ended the inquiry, and any discussion of what would have been the rights of the Ocean Bank, if not involved in the action, was needless and valuable only as a caution. That caution becomes applicable upon the facts before us and makes it prudent to take the measure of its just force.

The opinion of JOHNSON, J., points out that in *Hoyt* v. *Martense* the debt of the assignor, to which the assignment of the mortgage was collateral, was not yet due, and so the foreclosure was conducted in the names of both assignor and assignee, and for the understood purpose of cutting off the equity of the mortgagor without affecting the relations of the plaintiffs between themselves. In the case before us that difficulty did not exist, for Thayer, as an individual and as an assignor, was not a party at all and his personal rights not thereby involved or imperilled. The opinion again shows that in *Slee* v. *Manhattan Company* the foreclosure was by advertisement and did not and could not affect any one but the mortgagor of the land, and those claiming under him as owner of the equity of redemption or by a right subsequent to the mortgage, and was declared to leave untouched the right of the assignor as completely as if the foreclosure had been by an action in equity to which the assignor was not made a party. So far the comments of the court upon the two authorities bore upon the case then in hand and served to show that it stood outside of their scope and range. But then followed a suggestion throwing doubt upon their doctrine where the assignor's right remained. The learned judge conceded that right but questioned only its extent, and doubted whether the equity of the assignor extended to the land itself or merely to a lien for the definite sum of the debt secured by the mortgage. No such doubt remains in our minds. In

*Dalton* v. *Smith* (86 N. Y. 176) we held that the right of the assignor attached to the land if the assignee became purchaser, and to the purchase-money if the title went to a stranger. In that case the appellant's points cited *Bloomer* v. *Sturges* as having effectually shaken the previous authorities. Our opinion then was, and still remains, that the assignment is in substance a mortgage or pledge of the transferred security; that it gives to the assignee merely a defeasible title, which ends upon payment of the debt, leaving the ownership in the assignor precisely as if no transfer had been made; that such defeasible title cannot be changed or enlarged, as against the assignor, by any act or dealing of the assignee, or his representatives, to which the assignor is not in some manner a party; that if the assignee forecloses the mortgage without also foreclosing the assignor's right, and becomes a purchaser at the sale, he holds the land as a substitute for the mortgage and precisely as he held the latter, and by no other, or different, or stronger title; and that whatever of benefit results from extinguishing the mortgagor's equity inheres in the security assigned in its changed form and goes of necessity to him who resumes his ownership by payment of the debt. The sale to the assignee, freeing the property from the mortgagor's equity, affected the relations of both assignor and assignee with the original mortgagor, but not at all their relations with each other. The security was thereby strengthened and made more valuable but remained a security still, and held by the same defeasible title and upon the same conditions as at first. That is not only the logical but the just view of the transaction. The assignee gets exactly what he bargained for, and what is his of right. While he holds the security, whether in the form of mortgage or of land, he gains the added protection of the added value; but when his debt is paid, and his title annulled, he has no claim to anything more. It is said in the *Slee* case to be the invariable rule that where the mortgagee has gotten a renewal of a lease, or obtained any other advantage, in consequence of his situation as such mortgagee, the mortgagor coming to redeem is entitled

to the benefit thereof. We have carried that doctrine far enough to hold that one who received as collateral security a salt block, and leased it with others of his own to a corporation, taking stock in exchange, might be deemed to have elected to treat the property as entitled to the stock and that the latter was an incidental benefit accruing, the right to which on redemption was the mortgagor's. (*Chapman* v. *Porter*, 69 N. Y. 276.) If the assignment to Gilbert be treated as a pledge (*Campbell* v. *Parker*, 9 Bosw. 322; *Dalton* v. *Smith, supra*) the rule is equally familiar that the pledgee must account for incidental income or profits derived from the pledge, and that equity will not tolerate a separation of the pledge from the debt. Here the foreclosure and sale was an incident belonging to possession of the collateral, and to the trust which that possession created. It became the duty of the administrator to sell, because the trust security demanded that action for its safety and strength. It became the duty of the administrator to buy, for the protection of the estate and of the assignor, ultimately liable, and whatever of benefit resulted was an incident of the trust and belonged to the two parties concerned, according to their respective rights, and when the assignor redeemed belonged wholly to him.

The argument founded upon the doctrine of merger is well answered by the opinion of the General Term, which shows that in equity such merger will never be allowed against the interest of the parties or their obvious intention, or where the two estates are held in different rights. We have recently affirmed that view of the doctrine. (*Smith* v. *Roberts*, 91 N. Y. 470, 475.)

The contention that some unpaid interest should be accounted for by defendant cannot survive the settlement of the administrator's accounts by the surrogate. The notes were then paid with interest. If a greater rate was chargeable that was the time and occasion to have asserted the claim.

The judgment of the General Term should be affirmed with costs.

All concur.

Judgment affirmed.