### DAVITT v. O'CONNOR.*
### No. 214.

Circuit Court of Appeals, Second Circuit.
July 31, 1934.

Rehearing Denied Oct. 5, 1934.

Myron Kommel, of New York City (David L. Podell, of New York City, of counsel), for plaintiff.

George E. O'Connor, of Waterford, N. Y. (John T. Norton, of Troy, N. Y., of counsel), for defendant.

Before L. HAND, SWAN, and CHASE, Circuit Judges.

SWAN, Circuit Judge.

Jurisdiction of the District Court is grounded on diverse citizenship. The bill of complaint, filed in August, 1927, sought to hold the defendant accountable for the proceeds of real estate acquired by him in 1919 while acting as the plaintiff's attorney. The answer denied that the defendant was acting as the plaintiff's attorney in respect to the matters complained of, pleaded the statute of frauds, and set up a counterclaim for legal services rendered the plaintiff in other matters between 1911 and 1927. After entry in May, 1930, of an interlocutory decree adjudging the defendant liable to account, hear-

ings were had before a special master, and a final decree was entered January 7, 1932, awarding the plaintiff $10,842.66 plus interest and costs, which made a total of $14,816.-12. From this decree both parties have appealed; the defendant challenging the existence of any liability whatever, and the plaintiff asserting that the decree awarded too small a sum.

The defendant was required to account for the proceeds of two improved lots in the city of Troy, N. Y., title to which he acquired under circumstances now to be stated. In April, 1917, one Gleason, who then owned the lots, desired to mortgage them in order to obtain money for the business of the partnership of Gleason & Davitt, then in receivership, though supposed to be solvent, under a bill for dissolution filed by J. W. Davitt, one of the partners. J. W. Davitt was a son of the plaintiff, and his attorney in said suit was the defendant, O'Connor. He was also Mrs. Davitt's attorney before, during, and after the transactions now to be mentioned. Gleason having failed to find any one to advance the money upon his proposed mortgage, it was decided to utilize the credit of Mrs. Davitt, the plaintiff, in raising the money. Gleason executed a bond and mortgage dated April 11, 1917, to Mrs. Davitt for $12,-000. J. W. Davitt executed his promissory note for $10,000 to the order of Mrs. Davitt, and this note, indorsed by her and by the defendant, O'Connor, was negotiated at the National Bank of Cohoes, which delivered its check for $10,000 to J. W. Davitt. He in turn indorsed the check to the receiver of the partnership. Thus the receiver obtained $10,-000 from the bank upon paper bearing the signature of J. W. Davitt, his mother, and O'Connor, but Gleason was the person who would ultimately have to bear the burden of this debt, because his mortgage to Mrs. Davitt was given to secure her against liability on her accommodation indorsement of the J. W. Davitt note. The bank had insisted upon having Mr. O'Connor's name on the paper. To secure him against his accommodation indorsement, Mrs. Davitt assigned the Gleason bond and mortgage to him, and he gave her a letter agreeing to reassign them upon discharge of his liability as indorser. When the note matured on October 15, 1917, it was renewed for six months with the same indorsers. In February, 1918, this renewal note was replaced by a note made by Mrs. Davitt to the order of O'Connor and by him indorsed to the bank; the purpose being to eliminate J. W. Davitt from the transaction because he and his firm were about to go into bankruptcy

and the bank did not wish to appear as creditor of a bankrupt. When Mrs. Davitt's note became due on April 15, 1918, a renewal note was delivered to mature on October 15, 1918. This note went to protest. On October 17, 1918, the plaintiff signed another six months' renewal note due April 15, 1919, and the defendant again indorsed it. On October 30, 1918, Gleason's equity in the property was sold, subject to the mortgage, at public auction by order of the bankruptcy court. The purchaser was William O'Connor, brother of the defendant, who made the purchase at the defendant's request for the nominal price of $1. The defendant immediately went into possession and thereafter collected the rents, amounting to about $200 per month, which amounts he paid to the bank in reduction of the note. In December, 1918, the defendant, as assignee of the Gleason mortgage, brought a foreclosure suit under which he bought in the property on March 10, 1919, in partial satisfaction of the mortgage debt. Mrs. Davitt and her son were joined as parties defendant in the suit. Having thus acquired title, O'Connor contracted on March 25, 1919, to sell one of the lots for $5,000, the sum of $500 being paid on that date and the balance on July 1st. When Mrs. Davitt's note matured on April 15, 1919, O'Connor took it up without notice to her and gave the bank his own note for the balance remaining due. The amount remaining due had been reduced to about $8,500 by reason of monthly payments made by O'Connor after acquiring possession of the Gleason lots. However, O'Connor had expended in payments on the note, taxes, and costs in foreclosure more than he had collected from the lots during this period. On February 2, 1926, he sold the remaining lot for $40,000. Soon thereafter the plaintiff demanded an accounting, which the defendant refused, and the present suit was then brought. The defendant's accounting before the master in respect to the Gleason lots showed an excess of receipts over expenditures in the sum of $42,254.51. Against this he was allowed a fee of $15,000 for services rendered in connection with the Gleason mortgage and lots, and allowances for other services set up in his counterclaim gave him a total deduction of $31,411.85. For the net balance of $10,842.66, plus interest, the plaintiff was awarded a decree. Both parties have appealed.

The main contention on the defendant's appeal is that the court erred in requiring an accounting. That this contention cannot be sustained will be apparent from an analysis of the legal relations of the parties, even with-

out regard to their relation as attorney and client. Mrs. Davitt got title to the Gleason mortgage as security against liability on her indorsement of the note of April 11, 1917. Mr. O'Connor, by virtue of her assignment of the mortgage to him, became a pledgee of it to secure himself against any payments that he might be compelled to make upon his accommodation endorsement. If the note were paid by others than himself, he was bound to restore the pledge to his pledgor. His letter of April 12, 1917, did not add anything to the legal duties arising from the relationship of the parties; it merely made them explicit. When O'Connor foreclosed the mortgage, he affected the relations of both Mrs. Davitt and himself with the mortgagor—Gleason's rights were cut off—but he did not thereby affect his own relations with Mrs. Davitt. The security was merely improved; the property she had pledged was converted from a mortgage to a title freed of Gleason's equity, but it still remained only a security to Mr. O'Connor. See In re Estate of Gilbert, 104 N. Y. 200, 209, 212, 10 N. E. 148; Slee v. President, etc., of Manhattan Co., 1 Paige (N. Y.) 48; Hoyt v. Martense, 16 N. Y. 231; Dalton v. Smith, 86 N. Y. 176.

The defendant contends that by joining Mrs. Davitt as a party to the foreclosure suit her rights were cut off. Bloomer v. Sturges, 58 N. Y. 168, is relied upon. There the pledgor's debt was due, and the foreclosure complaint specifically alleged that the mortgage was held as collateral security and that the pledgor's rights were to be foreclosed. In the Gleason mortgage foreclosure the complaint contained no such allegations. The note upon which Mrs. Davitt was primarily liable was not yet due; O'Connor had as yet suffered no loss by reason of his suretyship, and did not release his right of recourse against her in the event that he should suffer loss. Mrs. Davitt's liability to the bank as holder of the note and to O'Connor as accommodation indorser remained unaffected by the foreclosure decree. Hence Bloomer v. Sturges is distinguishable and the foreclosure did not cut off Mrs. Davitt's right to maintain that the title acquired by Mr. O'Connor must be held on the same terms as was the mortgage. See discussion of Bloomer v. Sturges in Re Estate of Gilbert, supra. But, if this conclusion were otherwise doubtful, it would be made certain by the fact that O'Connor was the plaintiff's attorney and trusted adviser in all matters of business. He did not serve Mrs. Davitt with the foreclosure complaint, but got from her an admission of service and waiver of notice of all further proceedings. She was not represented by any other attorney in the foreclosure suit, but relied upon him to look out for her interests and upon his letter of April 12th. Occupying this fiduciary relationship, he could make no profit out of any transaction with her except under conditions not here realized. See Place v. Hayward, 117 N. Y. 487, 497, 23 N. E. 25.

The defendant also argues that, inasmuch as the plaintiff's claim is that he bought the property at foreclosure sale for her benefit, the statute of frauds is a bar, since no written evidence has been offered to support the claim. This argument rests on a misconception of the theory of the plaintiff's suit, which is that the original conveyance or assignment, although absolute in form, was intended only as security. In so far as the plaintiff's case rests on the relationship of pledgor and pledgee, parol evidence is admissible to show the true state of affairs, Melenky v. Melen, 206 App. Div. 46, 49, 200 N. Y. S. 730, and indeed the letter of April 12, 1927, is a written acknowledgment that the assignment was only for O'Connor's security. In so far as the plaintiff's case rests on the confidential relationship of attorney and client, it is equally clear that the statute is unavailing, for it expressly excludes a trust arising by operation of law.

Finally it is contended that the plaintiff has waived her rights by lapse of time, having been utterly indifferent to her obligations on the note and having asserted no claim in respect to the land until she learned of the defendant's profitable sale of the State street lot in 1926. The case is one of equitable cognizance; nothing appears to call forth the doctrine of laches. Until the defendant's liability on the note was satisfied and he was reimbursed for his outlays and expenses, he was entitled to possession of the land, and his possession was not adverse to Mrs. Davitt. Whether or not his possession would have been adverse if she knew he claimed it as his own need not be decided, for there is no evidence that she did know it until her demand for the proceeds of the sale was refused. There was no error in the interlocutory decree requiring an accounting. Cf. Dutton v. Willner, 52 N. Y. 312; Case v. Carroll, 35 N. Y. 385; Chapman v. Porter, 69 N. Y. 276; Duncomb v. New York, H. & N. R. Co., 84 N. Y. 190, 204; English v. Culley, 85 Cal. App. 291, 259 P. 355.

We turn now to a consideration of the offsets which the final decree allows the defendant, as to which both parties complain.

■ The first item is a fee of $15,000 for services in connection with the property in question. The defendant contends that this is too small; the plaintiff that to allow anything is to reward a recreant trustee for his breach of trust. A considerable part of the plaintiff's brief is devoted to pointing out respects in which Mr. O'Connor is claimed to have failed in the scrupulous duties which an attorney owes to his client. The special master found, however, that the defendant did not consciously practice any fraud upon the plaintiff, but was mistaken in his belief that he had a right to take and hold the property as his own. The District Court did not question this finding, nor do we. His assertion of ownership was, we believe, the result of an honest mistake as to the extent of the duties which the law placed upon him as pledgee of the mortgage and as Mrs. Davitt's attorney, rather than a willful violation of known fiduciary duties. Therefore he should be compensated for his services in managing the property and making a handsome bargain in selling it, and for his legal services, but the sum allowed seems too high. For collecting rents and making the sales the compensation should approach the basis of commissions payable to an agent; his legal services in this matter were neither difficult nor extensive. We think $5,000 would be a very liberal compensation, and reduce the allowance accordingly.

The defendant counterclaimed for legal services and disbursements rendered the plaintiff in numerous matters between 1911 and 1927. His bill of particulars claimed $16,205.45. The special master allowed most of the claims and interest thereon. The District Court modified the master's report only in respect to some of the interest charges. Only a few of the items require discussion here.

■ A fee of $11,650 was allowed in the National City Bank matter, the services extending from January, 1919, to July, 1927. Mrs. Davitt was indebted to the bank for some $41,000. The bank demanded payment or additional security. Mr. O'Connor arranged to pledge as additional security practically all of Mrs. Davitt's property except her farm, and to nurse matters along so as to realize as much as possible from the pledged property. He paid taxes, collected rents, foreclosed mortgages, made sales, and used the proceeds in reduction of the indebtedness to the bank. Probably through his efforts the bank consented to a reduction in the interest rate. While the services were extensive and apparently well performed, we think the allowance exorbitant. For some of them he made charges totaling about $1,000 as he went along. If he is allowed $5,000 additional, we believe he will be adequately compensated.

■ From 1911 to 1920 the defendant represented Mrs. Davitt in the settlement of the estate of her deceased husband. For fees and disbursements he has been allowed $2,024.53, with interest, which brings the allowance to $2,743.25. In November, 1913, and in April, 1918, the defendant obtained notes from Mrs. Davitt for $350 and $822.32, respectively. He testified that those notes were accepted in payment of services and disbursements to their respective dates after giving credit for payments made. These two items with interest from their respective dates are allowed. Although the plaintiff contends that recourse upon the notes must be by separate action, we think they may properly be offset under the counterclaim. In the final accounting in the Surrogate's court in July, 1920, the executors were allowed $234 for expenses and attorney's fees. This item is also allowed with interest. The claim of $1,000 additional compensation for preparing Mrs. Davitt's personal claim against the estate was first presented in 1928 in the present suit, and appears to be an afterthought prompted by the exigencies of this litigation. It is disallowed. The allowance of $445.89 for disbursements should also be stricken out, since the three items above mentioned cover disbursements as well as services.

■ Item 8 of the bill of particulars was allowed in the sum of $838.67 for miscellaneous services and disbursements. The bill is obviously padded, and the defendant's testimony of many of the items is largely guesswork— an estimate made up years after the actual occurrences. The plaintiff admits $172.67. To this we add $100 for collecting mortgages and drawing a deed. The item should be reduced to $272.67.

■ Item 4 of the bill of particulars was allowed for $200. The defendant settled a suit in 1921 for $50 which he retained. He never presented a bill and had no record of any additional charge. The claim is disallowed.

■ Item 2 is of a similar character. It was allowed for $380.09. Here also the defendant settled a suit, reimbursed himself for expenses, retained $119.91 for services, and paid over the balance to Mrs. Davitt's account. His ledger shows the account as balanced. He now asserts that his fee should be $500 instead of what he then charged. The item is disallowed.

48

Item 6 was allowed for $250. Mr. O'Connor was retained to defend Mrs. Davitt in a suit for false imprisonment in 1920. The suit never came to trial and was abandoned, but an answer was prepared and investigation made in preparation for trial. This item will stand as allowed.

The decree must be modified in accordance with the foregoing opinion. Costs of appeal are allowed to Mrs. Davitt both as appellee and appellant.

### On Petition for Rehearing.

**PER CURIAM.**

We have reconsidered all the questions raised by defendant's petition for a rehearing. As to the main question, it makes no difference whether the plaintiff bases her right merely upon her position as pledgor or upon the relation of attorney and client; she is entitled to hold the defendant to an accounting in either case, and the pleadings will support a decree on either theory. We have again considered the effect of Bloomer v. Sturges, 58 N. Y. 168, and see no reason to change our belief that the decree of foreclosure in the present case did not fall within the ruling there made. Therefore we still adhere to our decision on the main question.

As to the offsets, we think that the allowance of $5,000 is adequate for the defendant's services in foreclosing the mortgage and caring for the property; it is not far from 10 per cent. of the total moneys coming into his hands. In collecting rents and selling the property, his services were not those of an attorney but of a real estate agent. Nor can he be paid for assuming liability as indorser of the notes, because there was no such arrangement in advance. The testimony of the defendant's witnesses and the finding of the master as to the value of the services we disregard because it seems to us plainly beyond any fair appraisal; in such issues we are at liberty to rely upon our own estimates, the matter being within our special acquaintance as much as within that of other members of the bar. The same applies to the allowance, $6,000 in all, which we have made for the defendant's services in the National City Bank matter.

However, there are some items as to which we are willing to entertain a rehearing. First, is the question as to the disallowance of $1,000 for proving the plaintiff's $11,000 claim against the Davitt estate. That he should receive $1,000 we cannot agree; the stake at best was no more than the Herrington claim with interest, not over $2,500 at most. It may be that he should have been allowed $500 on this item. Again, in the Shanley Case, we may have allowed too little. We failed to observe that the defendant was an indorser on the note which he paid with the proceeds of the collection. This seems to break the force of the argument drawn from that payment. This may justify an added allowance of $380.09, the sum claimed. Finally, we are willing to reconsider our disallowance of $566 in item 8, miscellaneous services and disbursements. The gross total of all the above items, which on rehearing might be allowed, is $1,446.09. That is the total of the increases which we might make. Our treatment of the disbursements in the matter of the Davitt estate was entirely correct; the defendant seems to have misunderstood it. In view of the large recovery, it is possible that the plaintiff may prefer to concede the items above mentioned rather than go to a rehearing. If so, a decree may be entered as prescribed in our original opinion, less $1,446.09. If the plaintiff is unwilling to concede these items, she may file a brief in answer to the defendant's petition for rehearing within two weeks after this opinion is filed, and we will either dispose of the matter on the briefs or send it to a master.

The plaintiff is entitled to interest upon the amounts received from the time of the defendant's receipt of them; the defendant to interest upon his counterclaims from the time they were due. He had no lien for his services, even those in caring for the mortgaged property.

We do not now pass upon the remedies open to the plaintiff when the decree is entered. The matter is not controlled by state decisions. This is a federal suit in equity. See Equity Rule 8 (28 USCA § 723, p. 12).

Petition denied except as above set forth.