N. Jennie Riddle, Appellant, v. Geo. H. Todd and Arthur Todd, Trading as White & Todd, Appellees.

Gen. No. 9,547.

Opinion filed June 28, 1940.

BEAMISH, EDWARDS & BRUNNEMEYER, of Aurora, for appellant; HAROLD L. BEAMISH, of counsel.

MIGHELL, ALLEN, MATTHEWS & JORDAN, of Aurora, for appellees; EVERETT JORDAN, of counsel.

MR. JUSTICE DOVE delivered the opinion of the court.

On April 26, 1922, Oliver A. Burkhart and Carrie J. Burkhart, his wife, executed their several notes aggregating $16,000 and secured the payment thereof by a trust deed, by which they conveyed to Frank H. Riddle, trustee, certain farm lands in Kane county. These notes were held and owned by Lottie Perrine, William Holzheuter, Charles Carnes, Peter Weber and the said Frank H. Riddle. In 1929 Frank H. Riddle was indebted to the firm of White & Todd lumber dealers in the sum of $1,787.83 and on or about April 10, 1929, Riddle delivered three of the Burkhart notes aggregating $3,000 to Messrs. White and Todd as security for his indebtedness to them. On December 27, 1930, White and Todd, together with the other noteholders, filed a bill in the circuit court of Kane county to foreclose the Burkhart trust deed which resulted in a decree of foreclosure and sale. This decree found the amount due the several noteholders, including Messrs. White and Todd, and directed the master to sell in case of default. On November 2, 1932, the master in chancery sold the premises described in the Burkhart trust deed to Judge Olney C. Allen who acted for and on behalf of the several noteholders, for $23,000 and on November 11, 1932, he accepted as part payment of the purchase price a receipt executed by the attorneys representing

Messrs. White and Todd, for $4,723.46, being the amount found by the decree to be due, together with $23.62 interest thereon, leaving a deficiency due them of $78.38. On November 21, 1932, the master filed his report of sale showing that he had accepted this receipt of Messrs. White and Todd for $4,723.46 which he credited upon the purchase price, that there remained due them the sum of $78.38, that they had expended in connection with said foreclosure suit $187.50 for taxes, $61 for extending the abstract of title, $344.85 attorney fees and $25 for costs, being a total of $618.35. The master further reported that the amount due from Frank H. Riddle to Messrs. White and Todd for the payment of which Messrs. White and Todd had held the Burkhart notes was $2,260.76, which amount, together with said sum of $618.35 aggregates $2,879.11.

On December 31, 1937, the instant complaint was filed by M. Jennie Riddle in the circuit court of Kane county against George H. Todd and Arthur Todd, a partnership doing business as White and Todd, alleging that she was the assignee of the said Frank H. Riddle and invested with all the right and title to the proceeds of the Burkhart notes hereinbefore referred to, that Frank H. Riddle, on April 10, 1928 had deposited those notes with Messrs. White and Todd as security for the payment of the amount due them from Frank H. Riddle, that the trust deed securing the payment of those notes had been foreclosed, that following the sale of the property described in the trust deed, Messrs. White and Todd had received an amount in excess of the amount due them from Frank H. Riddle and prayed for an accounting. The defendants answered, setting forth in detail the transactions of the parties. A hearing was had before the chancellor, resulting in a decree finding the facts as herein stated and further finding that at the master's sale on November 2, 1932, there were no bidders present; that by an agreement of all the noteholders, including White and

Todd, Judge Allen bid in the property for $23,000, being the face value of all the notes secured by said trust deed, together with accrued interest thereon, as trustee for all of said noteholders; that the master received no money, other than the costs, but accepted receipts from the various noteholders for the respective amounts due them; that the defendants never received any sum of money whatever as a result of said sale, nor did any of the other noteholders; that in said foreclosure proceeding Frank H. Riddle was not a party in his individual capacity and that no effort was made in the foreclosure proceedings to foreclose the pledge of the interest Frank H. Riddle had in the notes which he had theretofore pledged to the defendants White and Todd; that the pledge exists; that the effect of the foreclosure proceedings was to place the title of the premises covered by the trust deed in Judge Allen as trustee for the benefit of all the noteholders and the certificate of beneficial interest in the premises issued by Judge Allen to the defendants White and Todd stands in lieu of said notes which Frank H. Riddle had pledged to White and Todd and that the plaintiff, as assignee of Frank H. Riddle, is not entitled to an accounting or entitled to recover any amount of money from the defendants, nor is she entitled to the certificate of beneficial interest issued to the defendants by Judge Allen until the amount due the defendants from Frank H. Riddle has been paid in full. The decree dismissed the complaint for want of equity at the costs of the plaintiff and to reverse that decree plaintiff appeals.

The evidence discloses that there was no agreement between the pledgor and pledgee respecting the notes which Frank H. Riddle lodged with appellees to secure his indebtedness to them and counsel for appellant state in their brief that under the circumstances shown to exist here appellees had a right to join with other holders of the notes secured by the Burkhart trust deed and foreclose the same. *Peacock v. Phillips,* 247 Ill.

467.   Counsel contend, however, that appellee's character was that of trustee for the pledgor and that it was their duty, as such trustee, to collect said notes and when collected to retain the amount due them and pay over the balance to the pledgor or to appellant as his assignee.   Counsel's argument is that the premises covered by the trust deed were sold by the master and that appellees, as noteholders, receipted for their proportionate part of the sum realized from said sale, that appellees are bound by the recitals in their receipt to the master and must be held to have collected that amount and are therefore liable to account to appellant for the excess over and above the amount due them on the indebtedness of Frank H. Riddle to them.   The trouble with this argument is that appellees have not only never received any excess over and above the amount due them upon the Frank H. Riddle indebtedness but have never been paid or received any part thereof.   All that the foreclosure proceedings did was to change the form of their security.   Counsel concede they had a right to foreclose and if at the foreclosure sale a stranger had purchased the property and appellees, as pledgees, had received a sum in excess of the amount due them, then they would have been liable to account for the excess to the pledgor or his assignee. Frank H. Riddle, the pledgor, was not made a party to the foreclosure proceedings and he was not bound by order or decree entered therein and that proceeding did not foreclose the pledge existing between him and appellees.   The foreclosure of the trust deed did not affect the pledge but only changed the form of appellee's security and the bidding in of the property by Judge Allen as trustee did not constitute a sale in the sense that the price bid was a payment of Frank H. Riddle's debt to appellees.

In *Farmers' Savings Bank v. Lesky,* 6 F. (2d) 539, it appeared that S. K. Lesky in 1919 borrowed $1,000 from the Farmers Savings Bank of West Plains, Mo.,

evidencing the same by his note due six months after date and pledged with the bank as collateral security therefor a promissory note for $4,500 secured by a mortgage on 320 acres of land in Montana. After the maturity of the principal note the bank, with the knowledge and at the request of Lesky foreclosed the mortgage on the Montana land and at the sale bid in the land for $5,625.59, of all of which Lesky had notice. Subsequently Lesky sought to recover of the bank the difference between the amount of his indebtedness to the bank and said sum of $5,625.52. In holding that there could be no recovery the court in its opinion said: "The note secured by the Montana mortgage was at all times the property of plaintiff. It was by him pledged to the bank as collateral security to the debt he owed it. At any time after maturity of his note he could have redeemed the same by paying his debt to the bank. As this was not done, the bank could hold the pledged security until its debt was paid. In the foreclosure suit in Montana the bank merely acted as the agent or representative of plaintiff. Any title it took to the mortgaged property in Montana it took for the use and benefit of plaintiff, and at any time the debt due the bank from plaintiff was paid, and the reasonable costs and expenses incurred by the bank in the foreclosure suit, the bank would be compelled to convey the Montana land to plaintiff, for the title was taken for his use and benefit. Had the bank, after taking title to the mortgaged premises, conveyed the same to a third party, it must have accounted to plaintiff for the proceeds, or the value of the land conveyed, if of greater value than received by the bank. To this extent go all the authorities on the subject. In *First Nat. Bank v. Ohio Falls Car & Locomotive Works,* (C. C.) 20 F. 65, Woods, Judge, stated the rule as follows: 'It has been held in a number of instances, and seems to be well established, that where a mortgage of real estate has been assigned as collateral security

for a debt other than the mortgage debt, and the holder of the collateral forecloses the mortgage, without making the assignor party to the purchase, and becomes the purchaser under the decree, the sale extinguishes the mortgagor's right of redemption only, and does not otherwise affect the relations of the assignor and assignee of the collateral. The property, as well after foreclosure as before, is held for the benefit of both pledgor and pledgee, and must be disposed of for the benefit of both. The price bid at such sale does not operate as payment upon the debt for which the mortgage was pledged. *Brown v. Tyler,* 8 Gray (Mass.) 135 (69 Am. Dec. 239) ; *Montague v. Boston & A. R. Co.,* 124 Mass. 242; *Stevens v. Dedham Inst., etc.,* 129 Mass. 547; *Slee v. Manhattan Co.,* 1 Paige (N. Y.) 48; *Hoyt v. Martense,* 16 N. Y. 231; *Dalton v. Smith,* 86 N. Y. 176; *Smith v. Bunting,* 86 Pa. 116; Jones, Pledges, §§ 659, 683.' See, also, *Nevius v. Moore,* 221 Mo. 330, 120 S. W. 43; *Holloway v. Holloway,* 103 Mo. 274, 15 S. W. 536; *In re Estate of Gilbert,* 104 N. Y. 200, 10 N. E. 148. The plaintiff seems to rely on *First National Bank of Kansas City, Mo. v. Rush,* 85 F. 539, 29 C. C. A. 333, decided by this court. However, consideration of that case fails to disclose it has any application here. At any time before foreclosure, plaintiff could have paid his note to the bank and taken down his collateral pledged. At any time during or after foreclosure of the Montana mortgage, he could have paid his indebtedness to the bank, evidenced by his promissory note, and the reasonable cost and expenses of the bank in acting as his representative in foreclosing the Montana mortgage, and after conveyance of the land to the bank compelled the bank to convey the same to him. His right of redemption of his property pledged was the only right of action had by him, under the circumstances, and such action was unnecessary in this case, because the bank had offered to convey on payment of its just demands.''

So in the instant case the evidence discloses that appellees offered at all times to turn over to Mr. Riddle, or his mother, the appellant, the beneficial interest they hold in the farm, title to which is held in Judge Allen, trustee, and assign to the pledgor or his assignee the beneficial certificate so evidencing their interest upon payment of the amount due from Chas. H. Riddle to appellees. All that appellees have is a beneficial interest in the land which was formerly covered by the trust deed which secured the payment of the notes which appellees held as collateral security for the payment of the indebtedness of Chas. H. Riddle and the evidence is that the income from this land is not sufficient to pay the taxes thereon. It is true that in the instant case Frank H. Riddle did not direct appellees to join with the other noteholders to foreclose, nor did he sign the agreement executed by the noteholders and Judge Allen but the effect of that arrangement was the same as if appellees had purchased the premises and taken title thereto in their own name and the result of so doing was simply to work a change in appellees' security. *Huntingdon Valley Trust Co. v. Norristown-Penn Trust Co.,* 329 Pa. 356, 196 Atl. 821.

*In re Gilbert,* 104 N. Y. 200, 10 N. E. 148, it was held that where an assignee of a mortgage as collateral security purchased the property under foreclosure in a suit to which the pledgor was not made a party, the land is substituted for the mortgage and the assignee holds it as security merely, subject to the assignor's right to redeem. In *First Nat. Bank v. Ohio Falls Car & Locomotive Works,* 20 Fed. 65, it was held that where a mortgage of real estate has been assigned as collateral security for a debt other than the mortgage debt and the holder of the collateral forecloses the mortgage without making the assignor a party, and becomes the purchaser under the decree, the sale extinguishes the mortgagor's right of redemption only and

does not otherwise affect the relations of assignor and assignee of the collateral.

The author of the annotation in 76 A. L. R. 730 citing many cases, states that when a pledgee, holding as collateral security a note secured by mortgage, forecloses the mortgage by a suit to which the pledgor is not made a party, without authority to purchase being expressly granted, that then, only the mortgagor's equity of redemption is foreclosed and the pledgee thereafter holds the land merely as security for his debt, or if the land has been disposed of, he is accountable for the proceeds received on such disposition.

In *Anderson v. Olin,* 145 Ill. 168, Sven O. Olin, the pledgee of notes secured by a real estate mortgage, foreclosed the same. A sale was had and he became the purchaser and obtained, in due time, a deed to the premises. Thereafter the pledgor, Peter W. Anderson, filed a bill against the pledgee to redeem from this foreclosure sale. In affirming a decree which dismissed his bill for want of equity the court pointed out the fact that the original foreclosure bill prayed that the rights and equities of Anderson be foreclosed, that Anderson was made a party and was served with process of summons and the decree followed the prayer of the bill and the court held that this decree, in express terms, cut off Anderson's right of redemption and that therefore there was no tenable ground for holding that Olin's purchase must be deemed to have been in trust for his pledgor. In the instant case Riddle, the pledgor, was not made a party defendant and the plaintiffs in that suit did not seek to divest Chas. H. Riddle of any of his rights. The sole object of the foreclosure proceeding was to foreclose the mortgagor's equity of redemption and neither the bill nor decree made any reference whatever to the right of the assignor to redeem and in no way cut off or attempted to cut off his rights. Appellant concedes appellees had a right to foreclose the trust deed and this is all they did. That proceeding

in no way affected Riddle's right to redeem. After the sale appellees held the same security as before only in a changed or altered form.

The decree appealed from was warranted by the evidence and is in accordance with the authorities and should be affirmed.

*Decree affirmed.*